1997 ND 52

**Linda R. STEEN, Appellant,**

v.

**NORTH DAKOTA DEPARTMENT OF HUMAN SERVICES, Appellee.**

Civil No. 960128.

Supreme Court of North Dakota.

April 1, 1997.

Rehearing Denied May 7, 1997.

Birch P. Burdick (argued), Bredahl Hill, P.C., Fargo, for appellant.

Jean R. Mullen (argued), Assistant Attorney General, Attorney General's Office, Bismarck, for appellee.

MARING, Justice.

[¶ 1] Linda Steen appeals from the March 12, 1996, judgment of the Cass County District Court upholding the decision of the Department of Human Services terminating her Medicaid Provider status for five years. We affirm the Department's decision and that of the District Court.

[¶ 2] On February 16, 1990, Linda Steen (Steen) signed an agreement with the North Dakota Department of Human Services (DHS) to become a Medicaid Service Provider. This allowed Steen to perform personal care services for clients in their homes and for Steen to receive payment through the Medical Assistance program. Steen became a Provider on March 6, 1990.

[¶ 3] Steen received a letter from DHS dated October 27, 1993, which informed her DHS was investigating her billing practices, and that she would not be authorized to take on any new clients or additional hours until the investigation was completed. Steen later received a letter from DHS dated July 7, 1994, informing her the investigation had concluded. The letter stated, "[t]he conditions imposed by letter of October 27, 1993 are removed. The restriction on no new clients or hours no longer applies." Accompanying this letter was a Notice of Provider Sanction. In that Notice, Steen was advised all of her provider records must be contemporaneously handwritten at the end of each work session and she was to mail her "completed turnaround document AND a copy of provider logs/records per client" to the agency through January 31, 1996 (emphasis in original). Steen wrote to DeNae Kautzmann, Appeals Supervisor at DHS, on July 15, 1994, requesting an appeal of the July 7 Notice of Provider Sanction. On August 18, 1994, Kautzmann sent Steen an acknowledgment of her appeal, and stated the sanction addressed recordkeeping. Steen replied by letter dated August 23, 1994, requesting an appeal of "the decision to limit [her] authorized hours." Kautzmann responded on August 29, 1994, by letter, informing Steen that the restriction of hours no longer applied. Kautzmann further asked Steen, "do you still wish to continue with the appeal sanction relating to record keeping?" On September 7, 1994, Steen and Kautzmann had a telephone conversation, the content of which is disputed. Subsequent to that conversation, DHS sent Steen a Notice of Dismissal of Appeal, "based on [Steen's] conversation with DeNae H.M. Kautzmann ... requesting a withdrawal of [her] appeal."

[¶ 4] On September 16, 1994, Raymond Feist, DHS Investigator, served a subpoena on Steen demanding all records of Steen's client care services including Medicaid Waiver clients, private pay clients, and clients obtained through another agency. Steen did not produce those records. On October 10, 1994, David Zentner, Director of Medical Services for DHS sent Steen a letter advising her that her provider status would be terminated on October 20, 1994, for no less than 5 years because of her failure to comply with the sanctions set forth in the July 7, 1994, Notice of Provider Sanction.

[¶ 5] Steen requested an administrative hearing to appeal her termination. On January 13, 1995, a hearing was held before Temporary Administrative Law Judge Joy Wezelman, who issued her recommended findings of fact, conclusions of law, and order on August 9, 1995. Wezelman recommended that the Department's decision to terminate Steen's provider status for five years be reversed and a less severe sanction be imposed. On October 12, 1995, Henry Wessman, Executive Director of DHS, issued his conclusive findings of fact, conclusions of law, and order affirming Steen's termination of provider status for at least five years. Steen appealed this Order to Cass County District Court. Based on the parties' briefs and oral argument, the District Court issued an Order for Judgment on March 8, 1996, affirming DHS's sanction terminating Steen's provider status. Steen appeals from that judgment to this court.

[¶ 6] Steen contends the findings of fact issued by the Director were not supported by a preponderance of the evidence; the Department abused its discretion by terminating her provider status; and she was denied procedural due process rights. We disagree.

[¶ 7] "When a decision of an administrative agency is appealed from the district

court to this Court, we review the decision of the agency, not the decision of the district court." *Walton v. N.D. Dept. of Human Services*, 552 N.W.2d 336, 338, (N.D.1996) (citation omitted).

[¶ 8] N.D.C.C. § 28–32–19 governs our review of agency appeals. This court must affirm the agency's decision unless we find one or more of the following:

    1.  The order is not in accordance with the law,

    2.  The order is in violation of the constitutional rights of the appellant,

    3.  Provisions of this chapter have not been complied with in the proceedings before the agency,

    4.  The rules or procedure of the agency have not afforded the appellant a fair hearing,

    5.  The findings of fact made by the agency are not supported by a preponderance of the evidence, and,

    6.  The conclusions of law and order of the agency are not supported by its findings of fact.

N.D.C.C. § 28–32–19.

[¶ 9] In an appeal from an administrative agency decision, the question is not whether we would have weighed the evidence differently and reached a different conclusion than the agency, but whether a reasoning mind could reasonably conclude the factual conclusions were supported by the evidence. *Halseth v. N.D. Workers Comp. Bureau*, 514 N.W.2d 371, 373 (N.D.1994). We note, although we affirm the agency's decision on its merits, we are troubled by the procedural missteps in this case.

I

[¶ 10] In accordance with N.D.A.C. § 75–01–03–22(2), the Executive Director of DHS (the Director) rejected the hearing officer's recommendations and issued the final order upholding Steen's five year termination. When the director of an agency rejects the recommendations of the hearing officer in favor of a contrary decision, the findings, conclusions, and decision should be sufficient to explain the Director's rationale for doing so. *See, e.g., Carlson v. Job Ser-*

*vice North Dakota*, 548 N.W.2d 389 (N.D. 1996); *Schultz v. North Dakota Dept. of Hum. Serv.*, 372 N.W.2d 888 (N.D.1985). This court's review of a decision rendered by an administrative agency does not include probing the decision maker's mental process if a hearing was given as required by law. *Carlson*, 548 N.W.2d at 395, (*citing Schultz v. North Dakota Dept. of Hum. Serv.*, 372 N.W.2d 888, 892 (N.D.1985)).

[¶ 11] Steen requested and received an administrative hearing on her appeal of the termination of her provider status as imposed by the letter dated October 10, 1994. This hearing was held before hearing officer Joy Wezelman on January 13, 1995. The hearing officer heard testimony from five witnesses, including Steen, and issued her recommended findings of fact, conclusions of law, and order. She recommended "[Zentner's] decision to terminate [Steen's] provider status be reversed and remanded to the Director of the Medical Services Division for reconsideration and determination of a less severe appropriate sanction."

[¶ 12] The Director listed five reasons for rejecting the hearing officer's recommendations. The Director's findings, conclusions, and order contain numerous references to the record and the transcript of the January 1995 hearing. It is clear the Director consulted the record and rendered his decision in reliance thereon.

[¶ 13] The Director found Steen had actual notice of her record keeping duties as a provider as early as December of 1989. The Director also found Steen had knowledge of her duty to prepare and maintain handwritten provider logs on October 12, 1993. In October of 1993 Raymond Feist, chief investigator for the Department, began investigating Steen's billing practices. As part of the investigation, Steen was notified that she would not be able to take on any new clients or work any additional hours until the conclusion of the investigation. On October 12, 1993, Feist visited Steen in Fargo, and was "convinced that [Steen] knew what she was supposed to do" when preparing her provider logs. Feist "was confident Steen knew that handwritten notes were re-

quired." At that time, Feist also asked Steen for her handwritten notes, which Steen did not provide. The Director, having reviewed the transcript of the hearing, found Feist to be a credible witness. As we stated in *Carlson*, "[a]lthough a hearing examiner has the advantage of hearing and seeing witnesses testify, an agency may reject the examiner's decision even on a question involving the credibility of contradictory witnesses." *Carlson*, 548 N.W.2d at 392, (*quoting Schultz v. North Dakota Dep't of Human Services*, 372 N.W.2d 888, 892 (N.D.1985)).

[¶ 14] The Director also found the Notice of Provider Sanction dated July 7, 1994, advised Steen of her duty to prepare contemporaneous handwritten logs and also required her to submit them to the Department for review prior to receiving compensation. Steen claims she was confused by the fact the July 7 Notice of Provider Sanction arrived in the same envelope as a letter releasing her from the restrictions imposed by the letter of October 12, 1993. However, Steen had been a service provider with DHS for approximately four years before she received this notice. It is certainly reasonable to assume she would read a letter from the agency through which she received payment for her work. It is also reasonable to further assume she would read both documents in their entirety—especially one entitled "Notice of Provider Sanction"—and discover what, if any, action had been taken. The letter of July 7, 1994, addressed the outcome of the investigation started in October of 1993. At the onset of that investigation, Steen was told not to take on any new clients or additional hours until the completion of the investigation. The July 7 letter terminated the investigation and the restrictions on clients and hours, which had remained in effect throughout the course of the investigation. The sanctions resulting from the investigation were addressed in the attached Notice of Provider Sanction. The Notice imposed the requirement that Steen continue to submit her contemporaneously handwritten provider service logs to DHS for inspection prior to receiving compensation for those services.

[¶ 15] After receiving this Notice, Steen wrote to DeNae Kautzmann, DHS Appeals Supervisor, requesting an appeal. In response Kautzmann sent Steen a letter dated August 18, 1994, acknowledging her appeal of the July 7 Notice which stated, "I have reviewed your request for hearing and the notice of sanction. The sanction does not demand refund of the overpayment, *it only addresses complete and accurate record keeping methods and sets up a monitoring procedure to insure that proper procedures are followed. The sanction addresses record keeping* which you acknowledged was faulty in your request for hearing. Do you still wish to have a hearing?" [Emphasis added]. Steen responded by letter dated August 23, 1994, that she "wish[ed] to appeal the decision to limit [her] authorized hours." Kautzmann then sent Steen a letter stating, "[e]nclosed is a letter dated July 7th from David Zentner indicating that the restriction of hours no longer applies ... Since the restriction no longer applies, *do you still wish to continue with the appeal sanction relating to record keeping?* " [Emphasis added].

[¶ 16] Based on the evidence and this correspondence, we cannot say a reasoning mind could not reasonably conclude Steen had notice of what was expected of her with regard to her preparation of contemporaneous handwritten logs after July 7, 1994, and failed to comply with the policy.

[¶ 17] In the future, however, we urge the Department to review the format of the "Notice of Provider Sanction." This entire situation may have been avoided had DHS more simply worded the July 7 letter and Notice of Provider Sanction to clearly inform Steen 1) the investigation commencing October 1993 had concluded, and with it, the restriction on her hours and new clients was lifted; 2) the investigation revealed improper billing practices and excess compensation for which Steen would not be required to reimburse DHS; and 3) Steen would be required to submit contemporaneously handwritten logs of services provided to DHS prior to receiving compensation for billings submitted after August 8, 1994, through January 31, 1996. Some plain language drafting on the part of

DHS just may have saved three years of litigation.

## II

[¶ 18] The Administrative Agencies Practice Act, specifically N.D.C.C. § 28–32–02(1), gives agencies power to make and update rules and procedures to be followed by the agency. "Every administrative agency is authorized to adopt, and from time to time to amend or repeal, reasonable rules in conformity with the provisions of any statute administered or enforced by the agency." *Id.* N.D.A.C. § 75–02–05–04(2) states, "Providers agree to keep and, upon request, to make available to the division of medical services and the department of health and human services, such records as they may, from time to time, deem necessary and proper." Clearly, establishing methods of recordkeeping for billing and quality assurance purposes is within the province and discretion of the Department.

## III

[¶ 19] Steen contends the Director of Medical Services abused his discretion in imposing such a severe sanction on her—the termination of her provider status for at least five years. While we agree this sanction is rather harsh, we determine the Director of Medical Services did not abuse his discretion.

[¶ 20] Steen contends the Director abused his discretion by failing to require "Provider Education" as the sanction instead of termination. We find this claim to be without merit.

[¶ 21] The letter from Director Zentner of October 10, 1994, terminating Steen's provider status contains the following language:

This action is taken because you failed to comply with the terms of the July 7, 1994 letter. You did not comply with the billing requirements or supply the necessary turnaround documents AND a copy of provider logs/records per client as specified. Furthermore, you failed to cooperate and provide these documents to the department's representative, Ray Feist on or about August 26, 1994 when requested to do so after being provided with ample notice.

This is a violation of your provider agreement and parts 2 and 8 of Chapter 75–02–05–04 and parts 5 and 15 of Chapter 75–02–05–05 of the North Dakota Administrative Code.

[¶ 22] When Steen signed her provider agreement on February 16, 1990, she agreed "to submit true, accurate and complete claims for reimbursement in the manner prescribed by the state agency"; and "to keep such records as are necessary to fully disclose . . . the extent of services provided . . ."; and "to furnish the state agency . . . with such information regarding any payments claimed by the provider . . . as the state agency may from time to time request." Steen agreed to these terms and once the Department prescribed the manner of recordkeeping and billing, Steen was bound to comply.

[¶ 23] N.D.A.C. § 75–02–05–05 lists grounds for sanctioning providers which include, "present[ing] . . . for payment any false or fraudulent claim for care or services"; submitting "false information for the purpose of obtaining greater compensation than that to which the provider is legally entitled"; failure "to disclose or make available . . . records of services provided . . . and records of payments received for those services"; failure "to comply and to maintain compliance with all regulations and statutes . . ."; and failure "to correct deficient provider operations within a reasonable time . . . after receiving written notice of these deficiencies from the division of medical services . . . ." N.D.A.C. § 75–02–05–05(1),(2),(5),(11), and (15). The Director cited each of the above subsections as bases for sanctioning Steen. After reviewing the record, we conclude a reasoning mind could reasonably find the facts support an order for sanctions.

[¶ 24] Generally, if authorized by law and justified in fact, the imposition of a sanction is a discretionary exercise of the agency Director's power. *Sletten v. Briggs,* 448 N.W.2d 607, 611 (N.D.1989), *cert. denied,* 493 U.S. 1080, 110 S.Ct. 1135, 107 L.Ed.2d 1041 (1990). N.D.A.C. § 75–02–05–08 places the sole right and responsibility for determining

and imposing any sanctions on the Director of Medical Services or his designee on behalf of DHS. This section lists several possible sanctions and several factors to be considered in the determination of any sanction, but the final decision is left to the discretion of the Director.

[¶ 25] N.D.A.C. § 75–02–05–08(2)(a)(1) lists termination from participation in the Medicaid program as one authorized sanction. This is the sanction chosen by Director Zentner. We previously concluded a preponderance of the evidence supports a finding that sanctions were justified. Accordingly, because this sanction is authorized by law and justified in fact, we determine the Director's selection of sanction was not an abuse of discretion, severe as it appears.

## IV

[¶ 26] Steen contends her due process rights, as required by the Department's own "fair hearing" regulations, were violated. N.D.A.C. § 75–02–05–09(2) provides appeals taken from a notification of provider sanction "shall be governed by chapter 75–01–03, and providers shall be treated as claimants thereunder." In her testimony, DHS Appeals Supervisor DeNae Kautzmann admitted the "fair hearing" regulations would apply to Steen in any appeals Steen may have taken from the July 7, 1994, Notice of Provider Sanction.

[¶ 27] An appeal to the Department must be in writing. N.D.A.C. § 75–01–03–05. In a handwritten note to Kautzmann dated July 15, 1994, Steen appealed the billings questioned in the July 7 Notice of Sanction. She pointed out the sample records of her billings were incorrect and there were errors in how the times were recorded. Steen wrote, "So I disagree with this decision so I'm asking to have an appeal, or *I'm asking you* to have this taken care of." [Emphasis in original]. Steen clearly appealed the July 7, 1994, Notice of Provider Sanction.

[¶ 28] Steen and Kautzmann had several telephone conversations between the time Steen sent this original request and the time her appeal was dismissed, but no notes or recordings of those conversations appear in the record.

[¶ 29] On August 18, 1994, Kautzmann sent Steen a letter acknowledging her appeal of the July 7 sanction. In that letter, Kautzmann attempted to clarify what issue Steen was appealing. Kautzmann's letter stated, "[t]he sanction does not demand refund of the overpayment, it only addresses complete and accurate record keeping methods and sets up a monitoring procedure to insure that proper procedures are followed. The sanction addresses record keeping which you acknowledge was faulty in your request for hearing. Do you still wish to have a hearing?" We determine this letter is a written acknowledgement of Steen's appeal, as required by N.D.A.C. § 75–01–03–13(1).

[¶ 30] N.D.A.C. § 75–01–03–08(1) sets forth the requirements for adequate notice of sanctions and states in pertinent part:

1. A notice is adequate if it includes:

   a. An explanation of the type of proposed action;

   b. An explanation of the reason for the proposed action; and the regulation or law upon which the action is based; and

   c. An explanation of the person's right to request corrective action from the county agency and the department, the person's right to request a fair hearing ...

[¶ 31] Under N.D.A.C. § 75–01–03–07, however, a claimant must be informed in writing of her right to a fair hearing and given an explanation of that right, including the right to be represented by counsel or other spokesperson. N.D.A.C. § 75–01–03–07(2) provides for several situations which trigger the claimant's right to an explanation of a fair hearing. While the section does not specifically mention sanctions imposed on service providers, we conclude N.D.A.C. § 75–02–05–09(2) requires providers be treated as "claimants" under N.D.A.C. § 75–01–03 with respect to appeals and, therefore, Steen's rights were triggered when the Notice of Provider Sanction was sent to her. We conclude Steen had a right not only to notice that she had a right to a "fair hearing," but to an explanation that she had a right to representation, too.

[¶ 32] Steen claims she was never notified of her right to be represented by counsel, and Kautzmann testified she could not recall whether Steen was ever advised of this right. The Notice of Provider Sanction advised Steen only of her right to an appeal. It did not advise her, however, of a right to representation.

[¶ 33] We conclude that Steen was not informed of her right to representation. However, where lack of notice does not result in any harm or prejudice, remand or dismissal is not necessary. *See, e.g., State v. Sundquist,* 542 N.W.2d 90, 92 (N.D.1996); *Estate of Robertson v. Cass County,* 492 N.W.2d 599, 603 (N.D.1992); *Lind v. Wells County Social Service Bd.,* 311 N.W.2d 547, 550 (N.D.1981). Steen does not establish she was prejudiced in any way by this lack of notice. Steen's brief merely states, "[i]f Steen had been represented by counsel, Steen may have chosen not to dismiss the appeal, or to have opted for a conditional withdrawal." Steen, however, never contends she did not know she had a right to be represented by counsel in the proceedings at hand. Steen has had access to attorneys in the past, and was represented by counsel at the January 13, 1995, hearing. Absent any prejudice, Steen's claim has no merit.

[¶ 34] According to the Department's own rules, Steen had a right to a "fair hearing," and she had a right to have the "fair hearing" requirements explained to her. This right was triggered when Steen was sent the Notice of Provider Sanction dated July 7, 1994. The Department would be well-advised to incorporate in the notice required by N.D.A.C. § 75-01-03-07 an explanation of "fair hearing" including the right to representation.

[¶ 35] Steen asserts she was denied her right to appeal the July 7, 1994, Notice of Provider Sanction. A person has a right to waive an appeal, or withdraw an appeal at any time before a decision is made by the Department. N.D.A.C. § 75–01–03–04. For a waiver of a known right to be effective, it must be a voluntary and intentional relinquishment of a known right, benefit, or advantage which the party would have enjoyed but for the waiver. *Steckler v.*

*Steckler,* 492 N.W.2d 76, 79 (N.D.1992). *See also, True v. Heitkamp,* 470 N.W.2d 582, 593 (N.D.1991). "Waiver and abandonment of an appeal is a voluntary relinquishment of a known right and must be made intentionally and with knowledge of the circumstances." (VandeWalle, J., concurring and dissenting).

[¶ 36] On September 7, 1994, Steen and Kautzmann had a telephone conversation, the contents of which are disputed, which resulted in Steen withdrawing her appeal. The next day, September 8, 1994, Steen was sent a Notice of Dismissal by Director Wessman, which stated, "[b]ased on your conversation with DeNae H.M. Kautzmann, Appeals Supervisor, on September 7, 1994, requesting a withdrawal of your appeal, your SPED/Medicaid waiver appeal concerning provider sanction is dismissed."

[¶ 37] Kautzmann testified Steen never requested a hearing on the recordkeeping portion of the July 7 sanction, and Steen withdrew her appeal because the July 7 letter did not require repayment of funds or cutback in hours or clients. Kautzmann stated, "[t]here was never a request [for an appeal] made based on the record keeping."

[¶ 38] Steen testified Kautzmann told her, "everything supposably (sic) was fine." Steen also testified, however, she and Kautzmann did not discuss recordkeeping. Steen testified had she known she was at risk of losing her provider status, she would not have dropped her appeal. The Director concluded Steen had "so severely undercut her own credibility that even the brief testimony she gave must be regarded as unreliable." This was the only evidence presented to demonstrate Steen did not act "knowingly and voluntarily." Based on the correspondence between Steen and Kautzmann discussing the purpose of the appeal, it is reasonable to conclude Steen knew her recordkeeping was at issue and she was to comply with the Department's procedures. While Steen may not have known specifically that her provider status would be terminated if she did not comply, she was aware of the sanction. It is reasonable to assume Steen could anticipate some repercussion if

she did not comply with the imposed sanction.

[¶ 39] N.D.A.C. § 75–01–03–05 requires appeals must be submitted to the Department in writing. The Department issued a Notice of Dismissal of Appeal in writing. We are, however, troubled that nothing in the Department's rules and regulations or in the record before us requires the withdrawal of an appeal at the request of the claimant be in writing. N.D.A.C. § 75–01–03–04(1) permits a claimant to withdraw an appeal at any time before a decision is made by the Department. We are disturbed that the withdrawal of an appeal is not afforded the same protection of writing as the filing or dismissal of the appeal. In addition, the Director's notice of dismissal gives no reason for the dismissal other than "based on your telephone conversation ... requesting a withdrawal of your appeal...." The notice does not refer to the decision Steen was appealing, does not refer to what was said during the conversation "requesting a withdrawal," and does not provide for objection to dismissal of the appeal in the event of a misunderstanding. The Department would be well-advised to require "withdrawals" of appeals be in writing.

[¶ 40] In conclusion, while we are troubled by the Department's lack of a requirement that a withdrawal of an appeal be in writing and by the Department's poor communication exhibited in this case, we determine Steen's withdrawal of the appeal was done knowingly and voluntarily.

[¶ 41] The order of the District Court upholding the Department's order for the termination of Steen's provider status for five years is affirmed.

[¶ 42] VANDE WALLE, C.J., and NEUMANN and SANDSTROM, JJ., concur. MESCHKE, J., I concur in much of the reasoning of this opinion, but dissent from the result.