Gale v. ND Board of Podiatric Medicine, 1997 ND 83, 562 N.W.2d 878|N.D. Supreme Court|
Gale v. ND Board of Podiatric Medicine, 1997 ND 83, 562 N.W.2d 878
[Go to Documents]
Filed Apr. 25, 1997
IN THE SUPREME COURT
STATE OF NORTH DAKOTA
1997 ND 83
Dr. Brian Gale, Appellee
v.
North Dakota Board of Podiatric Medicine, Appellant
Civil No. 960295
Appeal from the District Court for Burleigh County, South Central Judicial District, the Honorable Thomas J. Schneider, Judge.
REVERSED.
Opinion of the Court by Neumann, Justice.
Orell D. Schmitz (argued), of Schmitz, Moench & Schmidt, P.O. Box 2076, Bismarck, ND 58502-2076, for appellee.
Ken R. Sorenson (argued), Assistant Attorney General, Attorney General's Office, 600 East Boulevard Avenue, Bismarck, ND 58505-0040, for appellant.
North Dakota Board of Podiatric Medicine v. Gale
Civil No. 960295
Neumann, Justice.
[¶1] The North Dakota Board of Podiatric Medicine appealed from a judgment reversing the Board's decision to place Dr. Brian Gale on unsupervised probation for two years for misleading advertising and for failing to meet the minimal standards of acceptable podiatric practice. We hold the Board's decision did not violate administrative and statutory procedures and did not deprive Dr. Gale of due process. We also hold the Board's decision is supported by a preponderance of the evidence. We therefore reverse the judgment and reinstate the Board's decision.
I
[¶2] In January 1994, Dr. Charles Dahl of Bismarck asked Dr. Aaron Olson, the Board's president, about the scope of practice of Dr. Gale, a Bismarck podiatrist. Dr. Dahl specifically inquired about Dr. Gale's treatment of three patients, including Melvin Keator. In February 1994, Dr. Russell Emery of Bismarck also asked Dr. Olson about the scope of practice of a "local podiatrist." The gist of those inquiries was whether Dr. Gale's treatment of distal tibia and fibula fractures above the ankle joint was within the scope of podiatric medicine, which is defined by North Dakota law as "the diagnosis and treatment of conditions affecting the human foot and ankle." N.D.C.C. § 43-05-01(5). See also N.D.A.C. § 63-01-05-01(3) (defining podiatric medicine as "the diagnosis and treatment of conditions affecting the human foot and ankle and their governing and related structures").
[¶3] Dr. Olson and Dr. Gale were former associates in a podiatric practice, and when those inquiries were made, Dr. Olson was involved in civil litigation with Dr. Gale regarding the termination of their business relationship. According to Dr. Gale, Dr. Olson also was engaged in the area of podiatric practice identified in the inquiries and had been involved in Dr. Gale's treatment of Keator. See Keator v. Gale, 1997 ND 46.
[¶4] Dr. Olson convened a special Board meeting by teleconference in February 1994 to discuss the inquiries. The Board's counsel and all five Board members, Dr. Olson, Dr. Lee Hofsommer, Dr. Doug Moen, Dr. Robert Deichert, and Dr. Manuel Harris, participated in the teleconference. At the direction of counsel, the Board appointed a committee consisting of Dr. Hofsommer, Dr. Harris, and Dr. Moen to investigate the inquiries about Dr. Gale.
[¶5] The three-member investigatory committee met in March 1994. The investigatory committee decided the scope-of-practice inquiries were meritorious and recommended bringing the matter before the full Board. The committee also learned Dr. Gale, in renewing his 1994 North Dakota podiatric license, had not disclosed disciplinary proceedings against him by the State of California. Additionally, Dr. Moen suggested addressing Dr. Gale's standard of care.
[¶6] The full Board and its counsel met in March 1994. The Board, with Dr. Olson abstaining, accepted the investigatory committee's finding that the scope-of-practice allegations were meritorious. The full Board also voted to institute formal proceedings against Dr. Gale for breach of the minimal standard of podiatric care in treating Keator, withholding information about the California disciplinary proceeding, and engaging in "malicious" advertising. In a formal administrative complaint, the Board's counsel alleged Dr. Gale (1) violated the scope of practice for podiatric medicine; (2) failed to properly treat and care for patients; (3) failed to notify the Board he had voluntarily surrendered his California podiatric license; and (4) employed false or misleading advertising.
[¶7] The office of administrative hearings appointed a hearing officer to preside over the formal administrative proceedings. SeeN.D.C.C. ch. 54-57. After a formal administrative hearing in January 1995, the hearing officer found Dr. Gale had exceeded the scope of podiatric practice and had withheld information about the California disciplinary proceeding, but recommended dismissing those charges. The hearing officer found by a preponderance of evidence Dr. Gale had used misleading advertisements and had failed to conform to minimal standards of acceptable podiatric practice in treating Keator. The hearing officer recommended disciplining Dr. Gale for the misleading advertisements and his treatment of Keator.
[¶8] The Board, consisting of Dr. Hofsommer, Dr. Harris, Dr. Moen, and Dr. Deichert, adopted the hearing officer's findings that Dr. Gale had exceeded the scope of podiatric practice and had withheld information about the California disciplinary proceeding, and the hearing officer's recommendation to dismiss those charges. The Board adopted the hearing officer's findings that Dr. Gale's advertisements were misleading and that his treatment of Keator violated the minimal standards of acceptable podiatric practice. For those two violations, the Board imposed a $6,371.16 civil penalty against Dr. Gale and placed him on unsupervised probation for two years.
[¶9] The district court reversed the Board's decision, concluding the Board violated N.D.C.C. § 28-32-08(1) by conducting an "investigatory hearing" without giving Dr. Gale notice; N.D.A.C. § 64-04-01-02 by conducting a preliminary investigation instead of referring the matter to counsel to investigate; and N.D.C.C. § 28-32-12.2(1) by allowing Board members who had investigated the allegations to ultimately decide the matter. The court said
"Clearly, there has been discriminatory, selective prosecution by the Board. And, it is rather obvious that the Board has held Dr. Gale to a stricter standard than it has concerning identical conduct on the part of two Board members who participated in the proceedings against Dr. Gale.
"Dr. Lee Hofsommer, a Board member whose advertising was found to be misleading by the Board, was not subjected to any disciplinary action. Despite the Board's knowledge that Board president Dr. Olson practiced co-extensively in the anatomical area claimed in the Administrative Complaint against Dr. Gale to be outside the scope of practice, no disciplinary action was brought against Dr. Olson.
"What is most striking in this case is Dr. Olson's participation in bringing the administrative action against Dr. Gale. . . . [P]articipation by Dr. Olson permeated the entire proceedings with partiality. Dr. Olson is involved in a civil suit against Dr. Gale."
The court concluded the Board's order imposing discipline was not in accordance with the law; the Board failed to comply with N.D.C.C. ch. 28-32; and the Board's procedures did not afford Dr. Gale a fair hearing. The court also ruled the Board's actions were without substantial justification and awarded Dr. Gale $4,000 in attorneys' fees and $1,500 in expenses. The Board appealed.
II
[¶10] In appeals from decisions by administrative agencies, we review the agency decision and not the district court decision. S.N.S. v. North Dakota Dep't of Human Serv., 474 N.W.2d 717, 719 (N.D. 1991). Sections 28-32-19 and 28-32-21, N.D.C.C., outline our standard of review of decisions by an administrative agency. Jacobs v. North Dakota State Pers. Bd., 551 N.W.2d 779, 781 (N.D. 1996). Under N.D.C.C. § 28-32-19, we affirm the Board's order unless:
"1. The order is not in accordance with the law.
"2. The order is in violation of the constitutional rights of the appellant.
"3. Provisions of this chapter have not been complied with in the proceedings before the agency.
"4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
"5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
"6. The conclusions of law and order of the agency are not supported by its findings of fact."
In considering whether the Board's findings of fact are supported by a preponderance of the evidence, we exercise restraint and do not make independent findings of fact or substitute our judgment for the Board's decision. See Jacobs, 551 N.W.2d at 781. Our review of the Board's findings is limited to whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record. Id.
III
A
[¶11] The Board contends the district court erred in deciding two issues relating to the commencement of the administrative proceedings against Dr. Gale. First, the Board asserts the court erred in concluding the Board violated N.D.A.C. § 63-04-01-02 by conducting the initial investigation instead of referring the matter to its counsel.
[¶12] Section 63-04-01-02, N.D.A.C., provides, in relevant part:
"Preliminary investigation. All complaints alleging or implying violations of North Dakota Century Code chapter 43-05 or this title shall be referred to the board's counsel with instructions to investigate.
"1. Upon the initial investigation, the board's counsel will recommend to the board what action, if any, the board shall take.
"2. Complaints involving minor or routine issues may, at the discretion of the board, be assigned to a member of the board. Typically, such assignment will be a written inquiry, explanation, or warning to the person or persons accused, with copies of all correspondence to the other members.
"3. The board may hold a preliminary hearing to determine whether a formal administrative hearing is necessary."
[¶13] Here, the administrative proceeding against Dr. Gale was initiated after Dr. Dahl and Dr. Emery wrote the Board's president, Dr. Olson, about the scope of practice for podiatrists, specifically Dr. Gale. According to Dr. Olson, he referred the inquiries to the Board's legal counsel, who advised the Board to hold a meeting. Dr. Olson convened a special meeting of the Board by teleconference. At the meeting, Dr. Olson stated the purpose of the meeting was to discuss the allegations against Dr. Gale. The meeting was then turned over to counsel who
"stated the board needs to appoint a three member investigation committee to investigate the allegations. Next the board needs to obtain from Dr. Dahl and Dr. Emery the records pertaining to the patients they are concerned about. After reviewing the materials the board needs next to determine if the patients themselves need to be interviewed. The board next has to make a determination as to if the allegations are with merit and if they are if we are to proceed with any type of disciplinary action. He also stated that if we need to clarify any points of information we can call Dr. Gale if needed. When all the investigations are complete the committee is to report back to the entire board with their recommendation."
[¶14] The Board appointed a three-member committee to investigate the allegations against Dr. Gale and to make a recommendation to the full Board. The three-member investigatory committee met in March 1994 to discuss the allegations against Dr. Gale. The committee's minutes reflect:
"We have received chart notes and x-rays from the offices of Dr. Dahl. We have requested materials also from Dr. Emery but he has declined to submit these. Partial records have also been obtained from Dr. Gale and Olson of Bismarck. After review of these materials it was felt by all members that the allegations are with merit and thus this matter needs to be brought to the attention of the entire board. We will request thru Dr. Olson that such a meeting be called. Also during the investigation it has been discovered that Dr. Gale had action taken against him by the state of California which resulted in a negotiated settlement which required him to give up his license to practice in that state. This was not mentioned by Dr. Gale on his renewal application to North Dakota for 1994 and this needs to be addressed also. Along with these problems, Dr. Moen would like to discuss the issue of standard of care which he feels needs to be addressed."
The full Board met in March 1994 and voted to institute formal administrative proceedings against Dr. Gale.
[¶15] Section 63-04-01-02, N.D.A.C., outlines the Board's procedure for a "preliminary investigation." It says "[a]ll complaints . . . shall be referred to the board's counsel with instructions to investigate" and "[u]pon initial investigation, the board's counsel will recommend to the board what action, if any, the board shall take." Section 63-04-01-02, N.D.A.C., does not specify the breadth of counsel's "initial investigation."
[¶16] Here, although not as detailed an "initial investigation" as Dr. Gale would like, counsel's "initial investigation" and "recommend[ation]" effectively was for the Board to appoint a three-member committee to further investigate the allegations. At that stage, the Board could have preferred formal administrative proceedings against Dr. Gale instead of appointing a three-member committee to further investigate the charges. The Board's procedure effectively added an additional layer of investigation of the charges. Although Dr. Gale asserts an "initial investigation" by counsel serves to separate investigatory and decision-making functions of the Board, neither due process, see First Amer. Bank & Trust Co. v. Ellwein, 221 N.W.2d 509, 514 (N.D.), cert. denied, 419 U.S. 1026, 95 S.Ct. 505, 42 L.Ed.2d 301 (1974), nor N.D.A.C. § 63-04-01-02 precludes Board involvement in investigating complaints against podiatrists in this manner. We conclude the Board did not violate N.D.A.C. § 63-04-01-02.
B
[¶17] The Board contends the court erred in concluding the Board violated N.D.C.C. § 28-32-08(1) by conducting an "investigatory hearing" without giving Dr. Gale notice.
[¶18] Section 28-32-08(1), N.D.C.C., says:
"An administrative agency may hold investigatory hearings to which the provisions of subsections 1 and 2 of section 28-32-05 and any rules adopted establishing practices or procedures for a contested or noncontested case proceeding do not apply. An administrative agency may adopt rules of practice or procedure for investigatory hearings. No investigatory hearing may be held except pursuant to statute or rules of practice or procedure adopted by an agency. No investigatory hearing may be held unless the agency gives at least five days' notice to all parties involved in the hearing."
[¶19] In North Dakota Comm'n on Med. Competency v. Racek, 527 N.W.2d 262, 268 (N.D. 1995), we held N.D.C.C. § 28-32-08(1) authorized, but did not require, investigatory hearings by administrative agencies. Section 28-32-08(1), N.D.C.C., says no investigatory hearing may be held except pursuant to statute or rule. Chapter 43-05, N.D.C.C., does not authorize "investigatory hearings," and the Board has not promulgated administrative rules for "investigatory hearings." Compare N.D.C.C. § 26.1-03-19.4(3)(c) (authorizing Insurance Commissioner to call investigatory hearing); N.D.A.C. §§ 43-02-03-90.1 (authorizing Industrial Commission to hold investigatory hearing); 69-02-01-08 (authorizing Public Service Commission to hold investigatory hearing). The March 1994 meeting by the three-member committee was obviously investigatory, and the issue is whether it constituted a "hearing."
[¶20] In other administrative contexts, we have held a hearing generally contemplates the presentation of evidence and testimony. Happy Day Day Care Center v. Social Serv. Bd. of N.D., 313 N.W.2d 768, 771 (N.D. 1981). See also Aggie Investments GP v. Public Serv. Comm'n of N.D., 451 N.W.2d 141, 143 (N.D. 1990).
[¶21] In Happy Day a referee submitted a recommendation to an agency after conducting a four-day hearing in Minot during which exhibits and oral testimony were introduced into evidence. After two meetings in Bismarck, the agency affirmed the referee's recommendation. The district court in Burleigh County dismissed an appeal on the ground it should have been filed in the district court in Ward County, where the "hearing" was held. This court affirmed the dismissal, concluding the agency's adoption of the referee's recommendation did not constitute a "hearing or a part thereof" under N.D.C.C. § 28-32-15. We held "hearing" meant those functions at which evidence was presented and testimony given.
[¶22] In Aggie Investments we held a public input hearing on a proposed increase in electric rates constituted a "hearing or a part thereof" even though there was no sworn testimony or formally introduced evidence. We said, unlike the ultimate decision-making meetings at issue in Happy Day, the public input hearing clearly contemplated the opportunity for the public to have their statements included as part of the record, and we held an appeal to the district court in the county of the public input hearing was proper.
[¶23] Section 28-32-08(1), N.D.C.C., does not contemplate that every meeting by a Board, or its designated agents, during the investigatory stages of a complaint constitutes an "investigatory hearing." Rather, the nature of the proceeding must be considered. Here, the three-member committee considered medical records at its meeting to investigate the allegations against Dr. Gale. However, there was no formal introduction of evidence or testimony at the meeting, see Happy Day, and no opportunity for the public to include statements in the record. See Aggie. We hold the meeting by the three-member committee was not an "investigatory hearing" under N.D.C.C. § 28-32-08(1). We therefore conclude the Board did not violate N.D.C.C. § 28-32-08(1).
IV
[¶24] The Board argues the court erred in concluding the Board violated N.D.C.C. § 28-32-12.2(1), which provides:
"No person who has served as investigator, prosecutor, or advocate in the investigatory or prehearing stage of a contested case proceeding may serve as hearing officer."
Dr. Gale argues, because the Board participated in the investigation, it was precluded from serving as a hearing officer under N.D.C.C. § 28-32-12.2(1). Dr. Gale's argument assumes the hearing officer appointed by the office of administrative hearings and the Board were both hearing officers.
[¶25] Section 28-32-01(5), N.D.C.C., defines a "hearing officer" as "any agency head or one or more members of the agency head when presiding in an administrative proceeding, or, unless prohibited by law, one or more other persons designated by the agency head to preside in an administrative proceeding, an administrative law judge from the office of administrative hearings, or any other person duly assigned, appointed, or designated to preside in an administrative proceeding pursuant to statute or rule." The definition of "hearing officer" recognizes some agencies are not required to use hearing officers from the office of administrative hearings. SeeN.D.C.C. § 54-57-03(1). In those situations, the agency representative "presiding in the administrative proceeding" is the "hearing officer" under N.D.C.C. § 28-32-01(5).
[¶26] Here, the office of administrative hearings appointed an independent hearing officer to preside over the formal administrative proceedings against Dr. Gale. See N.D.C.C. § 54-57-03. The hearing officer presided throughout the formal administrative proceedings and prepared recommended findings and a recommended order for the Board. Except for two conclusions about the scope of podiatric medicine,(1)
the Board adopted the hearing officer's findings, conclusions, and recommendation.
[¶27] The Board's action in adopting the hearing officer's recommendation does not mean the Board was acting as a "hearing officer" under N.D.C.C. § 28-32-12.2(1). Construing "hearing officer" to include an agency when it acts as an ultimate decision maker would preclude an agency that uses hearing officers from the office of administrative hearings from performing investigatory or accusatory functions. We decline to construe the phrase "when presiding in an administrative proceeding" in N.D.C.C. § 28-32-01(5), to include the ultimate decision maker if that entity has not presided over the hearing and related proceedings. Rather, we construe that phrase to refer to the entity designated to preside at the hearing and any related administrative proceedings. Because the Board did not preside over the administrative hearing and related proceedings, the Board was not a "hearing officer" and did not violate N.D.C.C. § 28-32-12.2(1).
V
A
[¶28] The Board contends the court erred in concluding Dr. Olson's participation in the administrative proceedings permeated the entire action against Dr. Gale with partiality.
[¶29] The combination of investigatory, accusatory, and adjudicatory functions in one board is not, in itself, a denial of due process. Ellwein, 221 N.W.2d at 514. See Opdahl v. Zeeland Pub. Sch. Dist. No. 4, 512 N.W.2d 444, 446-47 (N.D. 1994); Froysland v. North Dakota Workers Comp. Bur., 432 N.W.2d 883, 893 (N.D. 1988).
[¶30] Here, the independent hearing officer presided over the formal administrative proceeding and recommended discipline for two of the four allegations against Dr. Gale. The provisions for independent hearing officers are designed to help insulate an agency's adjudicatory function from its investigatory or accusatory functions. Our review of the record of the formal hearing reflects Dr. Gale received a fair hearing by the hearing officer. CompareMunicipal Servs. Corp. v. State, 483 N.W.2d 560, 565 (N.D. 1992) (hearing officer's "prejudgment" about issues precluded fair hearing). Except for two conclusions of law, see fn. 1, the Board adopted the hearing officer's findings, conclusions, and recommendation. See Steen v. North Dakota Dep't of Human Servs., 1997 ND 52, ¶10 (agency must sufficiently explain rationale for rejecting hearing officer's recommendation). Although Dr. Olson, as Board president, was involved with some pre-complaint proceedings concerning Dr. Gale, Dr. Olson did not vote in the Board's decision to adopt the hearing officer's recommendation and to impose discipline. Dr. Olson's limited participation at the beginning of these proceedings, although ill-advised, did not permeate the entire proceeding. The Board is presumed to perform its duty regularly and to refuse to allow any preconceived biases from interfering with its ultimate decision. See Opdahl; Froysland. Dr. Gale was not denied a fair hearing or due process. We hold Dr. Olson's limited participation did not permeate the entire administrative proceeding with partiality.
B
[¶31] The Board also argues the district court erred in concluding the Board engaged in discriminatory, selective prosecution against Dr. Gale.
[¶32] Selective prosecution, if based upon improper motives, can violate equal protection. State v. Mathisen, 356 N.W.2d 129, 133 (N.D. 1984); State v. Knoefler, 325 N.W.2d 192, 197 (N.D. 1982). However, selective enforcement, by itself, is not a constitutional violation. Mathisen, 356 N.W.2d at 133; Knoefler, 325 N.W.2d at 197. A defendant claiming selective prosecution must establish other similarly situated individuals have not been prosecuted and the prosecution of the defendant is based upon constitutionally impermissible considerations. Mathisen, 356 N.W.2d at 133; Knoefler, 325 N.W.2d at 198.
[¶33] To the extent Dr. Gale raised this issue before the Board, he has not presented any factual basis to support his claim that the Board prosecuted him because of any constitutionally impermissible considerations. See Mathisen, 356 N.W.2d at 133; Knoefler, 325 N.W.2d at 197-98. The district court erred in concluding the Board engaged in discriminatory prosecution against Dr. Gale.
VI
[¶34] We next review the merits of the Board's decision to impose discipline against Dr. Gale. The Board imposed discipline against Dr. Gale for misleading advertisements and for failing to conform to minimal standards of acceptable and prevailing podiatric practice. SeeN.D.C.C. § 43-05-16(1)(e) and (k).
A
[¶35] Section 43-05-16(1)(e), N.D.C.C., authorizes discipline against a podiatrist for advertising that is "false or misleading, or the making of any false or misleading statement about the podiatrist's skill, training, experience, or ability or the efficacy of any treatment or remedy." Section 43-05-01(3)(g), N.D.C.C., defines false or misleading advertising as advertising that contains "representations or implications that in reasonable probability will cause an ordinary, prudent person to misunderstand or be deceived."
[¶36] Dr. Gale asserts the Board did not vote to bring charges against him for false or misleading advertising and cannot discipline him for those charges. Although the minutes of the Board's March 1994 meeting authorized the Board to pursue charges against Dr. Gale for "malicious" advertising, the formal complaint alleged he had engaged in advertising that was "false or misleading." The Board's administrative complaint provided Dr. Gale with notice of the charges against him, and the Board's imprecise narration of the charge in its pre-complaint minutes is not grounds for dismissing the charge of "false or misleading" advertising.
[¶37] Misleading advertising may be subject to discipline. SeeZauderer v. Office of Disc. Counsel of Supreme Court of Ohio, 471 U.S. 626, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985); Bates v. State Bar of Arizona, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977).
[¶38] Dr. Gale's advertisement said "specializing in the management of failed orthopedic and podiatric operations." The hearing officer found the words "specializing in the management of failed orthopedic . . . operations" were designed to lead the reader to believe Dr. Gale possessed skills, training, experience, and ability superior to those of orthopedic surgeons. The hearing officer concluded that a preponderance of the evidence supported a finding Dr. Gale's advertising was misleading. The Board adopted the hearing officer's finding.
[¶39] Although Dr. Gale argues his advertisement must be construed in the context of failed podiatric surgeries, the advertisement is not limited in that manner. Under our deferential standard of review, we conclude a reasoning mind could reasonably find Dr. Gale's advertisement contained representations that in reasonable probability would cause an ordinary, prudent person to misunderstand or be deceived. See N.D.C.C. § 43-05-01(3)(g). We hold the Board's finding Dr. Gale used misleading advertisements is supported by a preponderance of the evidence.
B
[¶40] Dr. Gale also argues the Board exceeded its authority in imposing sanctions for his treatment of Keator.
[¶41] Sections 43-05-16(1)(k) and (u), N.D.C.C., authorize the Board to discipline a podiatrist for:
"k. Engaging in unprofessional conduct that includes any departure from or the failure to conform to the minimal standards of acceptable and prevailing podiatric medical practice.
* * * * *
"u. A continued pattern of inappropriate care as a podiatrist."
[¶42] Dr. Gale argues subsection (k) authorizes discipline only for engaging in "unprofessional conduct" and not for failing to conform to the applicable standard of care in treating patients. He argues subsection (u) deals with a podiatrist's standard of care for treating patients and requires a "continued pattern of inappropriate care." He argues his treatment of Keator represents a single instance of inappropriate care and not a "continued pattern of inappropriate care."
[¶43] We construe statutes as a whole to give meaning to each word and phrase, if possible.Medcenter One v. North Dakota State Bd. of Pharmacy, 1997 ND 54, ¶26. Dr. Gale's argument ignores the last phrase of subsection (k), which defines unprofessional conduct to include "any departure from or the failure to conform to the minimal standards of acceptable and prevailing podiatric medical practice." The language of N.D.C.C. § 43-05-16(1)(k), as a whole, authorizes the Board to discipline a podiatrist for a single instance of failing to conform to minimal standards of acceptable and prevailing podiatric medical practice.
[¶44] Here, the evidence about Dr. Gale's treatment of Keator for fractures of the distal shafts of the tibia and fibula revealed a fibular malunion and a tibial nonunion, along with an inward angulation of twenty-three degrees. Dr. Timothy Bopp testified Keator's angulation exceeded the acceptable level of five degrees. Dr. Bopp also testified x-rays taken during Dr. Gale's treatment of Keator revealed the unacceptable angulation and should have resulted in further monitoring, rather than a discharge from treatment. A reasoning mind could reasonably find Dr. Gale's treatment of Keator failed to conform to the minimal standards of acceptable and prevailing podiatric medical practice. We hold the Board's findings about Dr. Gale's treatment of Keator are supported by a preponderance of the evidence.
[¶45] We reverse the district court judgment, and we affirm the Board's order imposing discipline against Dr. Gale. Because we affirm the Board's order, we conclude Dr. Gale is not a prevailing party and is not entitled to attorney's fees under N.D.C.C. § 28-32-21.1. SeeWestern Gas Resources v. Heitkamp, 489 N.W.2d 869, 874 (N.D. 1992), cert.denied, 507 U.S. 920, 113 S.Ct. 1281, 122 L.Ed.2d 675 (1993).
[¶46] We reverse the district court judgment, and we remand with instructions to reinstate the Board's decision.
[¶47]
William A. Neumann
Dale V. Sandstrom
Herbert L. Meschke
Zane Anderson, D.J.
Mary Muehlen Maring, Acting C.J.
[¶48] Zane Anderson, D. J., sitting in place of VandeWalle, C.J., disqualified. Footnotes:
1. The Board rejected the hearing officer's conclusions:
"3. (Conclusion of law) The term 'ankle,' as it is used in N.D.C.C. § 43-05-01, subsection 5, refers to the joint between the tibia and fibula, and the talus, and, at least for purposes of treatment of bone fractures, defines an anatomical boundary between the foot and the lower leg, beyond which a licensed podiatrist in North Dakota may not practice.
"4. (Conclusion of law) Brian Gale's treatment of Melvin Keator . . . for fractures of the fibula and/or tibia above the distal part of the fibula or tibia shaft that did not involve injury or damage to the foot constituted the treatment of a malady or defect that is outside the statutory scope of the practice of podiatric medicine."