Filed 3/18/99 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

1999 ND 44

John Kerzman, Claimant and Appellant

v.

The North Dakota Workers 

Compensation Bureau, Appellee

No. 980327

Appeal from the District Court of Ward County, Northwest Judicial District, the Honorable Glenn Dill III, Judge.

AFFIRMED.

Opinion of the Court by Neumann, Justice.

Stephen D. Little, of Dietz, Little & Haas, 2718 Gateway Ave., #301, Bismarck, ND 58501, for claimant and appellant.

Brent J. Edison, Special Assistant Attorney General, P.O. Box 1695, Bismarck, ND 58502-1695, for appellee.

Kerzman v. North Dakota Workers Compensation Bureau

No. 980327

Neumann, Justice.

[¶1] John Kerzman appealed a judgment affirming a North Dakota Workers Compensation Bureau order denying him further disability benefits and ordering him to repay $9,998.03 in previously paid disability benefits.  We affirm.

[¶2] On July 26, 1986, Kerzman injured his lower back during the course of his employment.  Dr. James Adams reported Kerzman’s injury was a continuation of previous back injuries in 1979 and 1981, and concluded Kerzman’s work injury aggravated his preexisting condition by fifty percent.  The Bureau accepted Kerzman’s claim and paid medical expenses and disability benefits on a fifty percent aggravation basis.  

[¶3] Kerzman disputed the Bureau’s decision to pay him benefits on a fifty percent aggravation basis, but in 1988, after consulting with counsel, he entered a written stipulation with the Bureau which provided:

[Kerzman’s] medical history is significant in that [he] underwent laminectomy and diskectomy of the lumbar spine in 1981;

WHEREAS, the greater weight of the evidence taken as a whole indicates that [Kerzman’s] employment was also a substantial contributing factor to [his] current low back problems;

WHEREAS, the Bureau accepted liability in this case, and paid the associated medical expenses and disability benefits on a fifty percent (50%) aggravation basis;

WHEREAS, there has been dispute between the parties concerning whether [Kerzman’s] prior problems were an impairment or disability known in advance of the work related injury;

WHEREAS, there is evidence in the record [Kerzman] was under a disability and an impairment as a result of his 1981 surgery;

WHEREAS, [Kerzman] has expressed an interest in vocational rehabilitation retraining to enable him to obtain transferable skills for a return to gainful employment within the physical restrictions occasioned by his work injury;

WHEREAS, the Bureau ordered an award of vocational rehabilitation retraining benefits on August 13, 1987;

WHEREAS, it appears in the best interests of the parties to pay [Kerzman’s] vocational rehabilitation allowance in a lump sum;

WHEREAS, the parties are desirous of stipulating to a settlement in this case.

IT IS STIPULATED AND AGREED by and between the parties as follows:

. The Bureau will continue to pay all reasonable medical expenses directly related to [Kerzman’s] injury on July 26, 1986.

. The Bureau will pay and [Kerzman] will accept payment of the total sum of Eight Thousand One Hundred Sixty-Four ($8,164.00) Dollars as full and complete settlement of his claim for disability benefits and rehabilitation retraining benefits in connection with his injury on July 26, 1986.

. [Kerzman] shall be entitled to a permanent partial impairment award at fifty percent in the future, should objective medical evidence pursuant to the AMA Guides so indicate.

. It is further expressly understood and agreed by and between the parties that relocation expenses shall remain open for consideration by the bureau in the future.

. [Kerzman] shall not be entitled to any further benefits under the North Dakota Workers Compensation Act in connection with his injury on July 26, 1986, beyond those previously awarded and paid and those agreed to by the terms of this stipulation.

[¶4] The Bureau thereafter paid fifty percent of Kerzman’s medical expenses.  In 1995, Kerzman claimed the stipulation required the Bureau to pay all of his medical expenses. In March 1996, the Bureau rejected Kerzman’s claim for payment of all of his medical expenses.  

[¶5] In 1995, Kerzman also reapplied for disability benefits, and the Bureau paid him some disability benefits from December 1994 through May 1996.  The Bureau subsequently issued a notice of intention to discontinue benefits, which advised Kerzman the Bureau had erroneously accepted his reapplication for disability benefits.  The Bureau issued an order denying Kerzman further disability benefits and requiring him to repay $9,998.03 in previously paid disability benefits. 

[¶6] After a formal hearing, an administrative law judge recommended paying fifty percent of Kerzman’s medical expenses.  The ALJ also recommended revoking the Bureau’s order denying Kerzman further disability benefits, because the ALJ concluded the Bureau had exercised its discretion and reopened Kerzman’s disability claim.  The Bureau accepted the ALJ’s recommendation about Kerzman’s medical expenses, but rejected the recommendation the Bureau had exercised its discretion and reopened the disability claim.  The Bureau explained:

12.  In his recommended findings of fact, conclusions of law and recommended order dated August 19, 1997, the ALJ made certain findings and conclusions to the effect that in accepting the reapplication and paying disability benefits the Bureau elected to exercise its discretion to reopen Mr. Kerzman’s disability claim pursuant to § 65-

05-04, N.D.C.C., and thus had not accepted Kerzman’s reapplication based on an “erroneous adjudication” under Section 65-05-29, N.D.C.C.

13.  The ALJ’s reasoning erroneously assumes the Bureau made a deliberate decision to abandon and overturn the stipulation with Kerzman and the employer and to exercise its right to reopen Kerzman’s disability claim under Section 65-05-04, N.D.C.C.  The Bureau finds that a preponderance of the evidence indicates the Bureau did not make such a deliberate decision, and instead overlooked the Stipulation when it accepted the reapplication.  The Bureau further finds a preponderance of the evidence indicates the Bureau took appropriate corrective action after it discovered Kerzman’s reapplication had been erroneously accepted.  In addition, the Bureau finds the interpretation of the legal effect of the stipulation is a question of law, fully reviewable by the Bureau.

The district court affirmed the Bureau, and Kerzman appealed.

[¶7] On appeal from a district court’s review of a decision by the Bureau, we review the Bureau’s decision.  
Blanchard v. North Dakota Workers Comp. Bur.
, 1997 ND 118, ¶ 11, 565 N.W.2d 485.  We affirm the Bureau’s decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, or its decision is not in accordance with the law.  
Id.
  Our review of the Bureau’s findings of fact is limited to determining if a reasoning mind reasonably could have decided the Bureau’s findings were proven by the weight of the evidence from the entire record.  
Feist v. North Dakota Workers Comp. Bur.
, 1997 ND 177, ¶ 8, 569 N.W.2d 1.  

[¶8] Kerzman argues the parties’ stipulation unambiguously requires the Bureau to pay all of his medical expenses. 

[¶9] Stipulations are governed by contract law.  
See
 
Rueckert v. Rueckert
, 499 N.W.2d 863, 867 (N.D. 1993).  The construction of a written contract to determine its legal effect is a question of law.  
Pamida, Inc. v. Meide
, 526 N.W.2d 487, 490 (N.D. 1995).  We construe contracts to give effect to the parties’ mutual intention.  N.D.C.C. § 9-07-03; 
Pamida
 at 490.  The parties’ intention must be ascertained from the writing alone, if possible.  N.D.C.C. § 9-07-04; 
Pamida
 at 490.  We construe contracts as a whole to give effect to each provision, if reasonably practicable.  N.D.C.C. § 9-07-06.  

[¶10] If a written contract is ambiguous, extrinsic evidence may be considered to show the parties’ intention.  
Pamida
 at 490.  If a contract is clear and unambiguous, we construe it from the four corners of the document.  
Id.
  Whether a contract is ambiguous is a question of law.  
Id.
  If the parties’ intention can be ascertained from the writing alone, the interpretation of the contract is a question of law, and we will independently examine and construe the contract to determine its legal effect.  
Id.

[¶11] Here, the parties’ stipulation recognizes the Bureau had accepted liability and paid medical expenses and disability benefits on a fifty percent aggravation basis and specifies the Bureau would  “continue to pay all reasonable medical expenses directly related to [Kerzman’s work] injury.”  The stipulation requires the Bureau to continue to pay all of Kerzman’s reasonable medical expenses directly related to his work injury.  The phrase “all reasonable medical expenses,” by itself, suggests the Bureau would pay one hundred percent of Kerzman’s medical expenses.  The word “continue,” however, modifies that phrase and suggests an uninterrupted practice of doing something that has been done in the past.  The stipulation acknowledged the Bureau had been paying fifty percent of Kerzman’s medical expenses, and the Bureau found it had paid Kerzman’s reasonable medical expenses on a fifty percent basis throughout the course of his claim.  Construing the stipulation to change the percentage of payment for Kerzman’s medical expenses from fifty percent to one hundred percent would render the word “continue” meaningless and would ignore the Bureau’s payment history.  We construe contracts as a whole to give meaning to each provision.  N.D.C.C. § 9-07-06.  When construed as a whole to give meaning to each provision, including the reference to the Bureau’s payment history, we believe the stipulation manifests the parties’ intention for the Bureau to continue to pay all reasonable medical expenses directly related to Kerzman’s work injury on the same basis as the Bureau had paid medical expenses before the stipulation — fifty percent.  We therefore conclude the Bureau did not err in paying fifty percent of Kerzman’s medical expenses under the parties’ stipulation.

[¶12] Kerzman contends the stipulation did not affirmatively waive his right under 
Lass v. North Dakota Workmen’s Comp. Bur.
, 415 N.W.2d 796 (N.D. 1987), to reapply for disability benefits upon a significant change in medical condition. 

[¶13] In 
Lass
, 415 N.W.2d at 800-01, we held the Bureau, in denying requested benefits, could not deny future claims based upon a change in the claimant’s medical condition.  Under 
Lass
, the Bureau may not unilaterally issue an order denying future disability benefits if the claimant’s medical condition changes.  
Lass
, however, did not involve a stipulation and does not preclude a claimant from agreeing to forego future disability benefits in exchange for a lump sum settlement.  
See
 N.D.C.C. § 65-

05-25.  

[¶14] Here, the stipulation awarded Kerzman $8,164 as “full and complete settlement of his claim for disability benefits and rehabilitation retraining benefits” in connection with his work injury.  The stipulation further provided Kerzman was “not . . . entitled to any further benefits . . . beyond those previously awarded and paid and those agreed to by the terms of this stipulation.”  Kerzman entered the stipulation after consulting with counsel.  Under the unambiguous language of the stipulation, Kerzman agreed to forego any further disability benefits in exchange for a lump sum settlement. 

[¶15] Kerzman argues the Bureau exercised its discretion under N.D.C.C. §§ 65-05-

04 and 65-05-08 in accepting his reapplication for benefits.  

[¶16] The Bureau has discretion under N.D.C.C. §§ 65-05-04 and 65-05-08 to accept a reapplication for disability benefits.  Here, however, the Bureau’s notice of intention to discontinue benefits explained the Bureau had erroneously accepted Kerzman’s reapplication.  Although the Bureau could have presented additional evidence of mistake, the Bureau’s notice supports an inference of inadvertence.  A reasoning mind could have reasonably concluded the Bureau erroneously paid benefits due to an erroneous adjudication. We conclude the Bureau’s decision it erroneously accepted Kerzman’s reapplication for benefits is supported by a preponderance of the evidence, and under N.D.C.C. § 65-05-29, the Bureau is authorized to require a claimant to repay benefits paid under an “erroneous adjudication.”  
See
 
Johnson v. North Dakota Workers Comp. Bur.
, 484 N.W.2d 292, 295-96 (N.D. 1992). 

[¶17] Kerzman contends the Bureau violated N.D.C.C. § 28-32-12.2(1) by allowing Jeff Bitz, its director of claims and rehabilitation, to participate in the investigation of the claim and to function as a “hearing officer” in acting on the ALJ’s recommendation.

[¶18] Section 28-32-12.2(1), N.D.C.C., prohibits a person who has served as an investigator, prosecutor, or advocate in the investigatory or prehearing stage of a contested case from serving as a “hearing officer.”  Section 28-32-01(5), N.D.C.C., defines a “hearing officer” as “an agency head or one or more members of the agency head when presiding in an administrative proceeding, or, unless prohibited by law, one or more other persons designated by the agency head to preside at an administrative proceeding, an administrative law judge from the office of administrative hearings, or any other person duly assigned, appointed, or designated to preside at an administrative proceeding pursuant to statute or rule.”

[¶19] In 
Gale v. North Dakota Bd .of Podiatric Med.
, 1997 ND 83, ¶ 27, 562 N.W.2d 878, we said construing hearing officer to include an agency when it acts as an ultimate decision maker would preclude an agency that uses hearing officers from the office of administrative hearings from performing investigatory or accusatory functions.  We declined to construe the phrase “when presiding in an administrative hearing” under N.D.C.C. § 28-32-01(5) to include the ultimate decision maker if that entity has not presided over the hearings and related proceedings.  
Gale
 at ¶ 27. Instead, we construed that phrase to refer to the entity designated to preside at the hearing and any related administrative proceedings.  
Id.

[¶20] Here, the Bureau asked the office of administrative hearings to appoint an independent hearing officer to preside over the formal hearing.  The hearing officer presided over the hearing and prepared recommended findings and a recommended order for the Bureau.  Bitz did not preside over the administrative hearing and thus did not function as a “hearing officer” in acting on the ALJ’s recommendation.  The Bureau therefore did not violate N.D.C.C. § 28-32-12.2(1).  

[¶21] We affirm the judgment affirming the Bureau’s order.

[¶22] William A. Neumann

Mary Muehlen Maring

Carol Ronning Kapsner

Dale V. Sandstrom

Gerald W. VandeWalle, C.J.