966 P.2d 1031

**Michael B. STAPLEY and Daniel E. Dewitt, Plaintiffs–Appellees,**

v.

**STATE of Arizona, ex rel. the ARIZONA GAME AND FISH COMMISSION, Defendant–Appellant.**

**No. 1 CA–CV 97–0515.**

Court of Appeals of Arizona, Division 1, Department D.

June 4, 1998.

Review Denied Nov. 17, 1998.

Koglmeier, Dobbins, Nelson & Delgado, P.L.C. by Matthew D. Koglmeier Michael G.

Delgado Jason J. Bliss, Mesa, for Plaintiffs–Appellees.

Grant Woods, Attorney General by James F. Odenkirk, Assistant Attorney General, Phoenix, for Defendant–Appellant.

WEISBERG, Judge.

¶1 Arizona is a participant in the "Wildlife Violator Compact," an interstate agreement promoting cooperation in enforcing laws related to managing wildlife resources. Among other things, participating states agree to honor other participating states' wildlife license suspensions of those who violate game and fish laws.

¶2 The Arizona Game and Fish Commission ("the Commission") suspended the hunting privileges of two Arizona residents based on Utah's suspension of their Utah hunting privileges following their convictions for wanton destruction of wildlife out of season. Upon review of the Commission's action, the superior court held that the Commission was required to follow the same procedures that would apply had the convictions occurred in Arizona, including initiating proceedings and giving notice within 180 days of conviction. Because the Commission concededly did not comply with the 180–day provision, the court ruled that the Commission lacked jurisdiction to suspend appellees' hunting licenses. We conclude that the superior court misinterpreted the pertinent statutes and therefore reverse.

## Facts and Procedural History

¶3 In October 1994, Michael Stapley and Daniel DeWitt ("appellees"), both Arizona residents, drove to the "Paunsaugunt limited entry area" of Utah to hunt mule deer. Hunting at night, after legal hours, they spotlighted a buck, shot it, and killed it. They did not have a valid permit to hunt in that area, and deer were not then in season. They began to drive away, but were discovered by a Bureau of Land Management Ranger and a Kane County Deputy Sheriff. They admitted having poached the deer and were arrested.

¶4 On April 14, 1995, each appellee pled guilty to a Utah misdemeanor violation: wanton destruction of protected wildlife out of season. In pertinent part, their plea agreements called for five-year suspensions of their hunting privileges. On January 31, 1996, the Division of Wildlife Resources of the Utah Department of Natural Resources (the "Utah Division of Wildlife Resources") officially ordered the five-year suspensions of their hunting privileges. The suspension order found that they had "knowingly and flagrantly violated Utah wildlife" laws. The order against Stapley provided:

1. Mr. Stapley's big game hunting privileges are suspended for a period of five years consistent with the court order beginning April 14, 1994 and ending April 14, 2000.

2. During the period of suspension, Mr. Stapley may not obtain or attempt to obtain any permit issued for taking big game.

3. Any big game permits obtained during this suspension period shall be deemed invalid for use.

4. This order is binding only in Utah, however, a similar action may be taken in Arizona or other states pursuant to the Wildlife Violator Compact.

A similar order was entered against DeWitt.

¶5 On a date not disclosed by the record, the Utah Division of Wildlife Resources informed the Arizona Game and Fish Commission of the suspensions. On May 13, 1996, the Commission sent appellees notice of a scheduled June 7 hearing to suspend their Arizona hunting privileges. Attorneys for both men filed objections. The hearing was held, after which the Commission suspended appellees' license privileges for five years.[1] Both men petitioned for a rehearing, but the Commission reaffirmed the suspensions.

¶6 Appellees then filed separate actions for judicial review of the suspensions, which were later consolidated. After briefing and

---

1. At oral argument, counsel for the Commission indicated that, following its usual practice, the appellees' reciprocal suspensions would be concurrent with their Utah suspensions. Appellees' counsel did not dispute that interpretation. We therefore proceed under the assumption that the suspensions in this case are concurrent with those in Utah.

argument, the superior court ruled that the Commission lacked the power to suspend appellees' licenses because the notices were untimely. After denying the Commission's motion for reconsideration, the court entered judgment for appellees, overturned the suspensions, and awarded them attorney's fees. The Commission filed a timely notice of appeal, and we have jurisdiction pursuant to A.R.S. sections 12–2101(B) and 12–913 (1997).

## Discussion

**[1]** ¶ 7  This case involves the interpretation of two statutes: A.R.S. section 17–340(D), which requires that the Commission give notice of a suspension within 180 days of the underlying conviction, and A.R.S. section 17–502, which is the Wildlife Violator Compact ("the Compact"). The issue before us is whether the 180–day limit found in A.R.S. section 17–340(D) applies to suspension proceedings conducted pursuant to Article V of the Compact. To decide this issue of statutory construction, we conduct a de novo review. *Hampton v. Glendale Union High Sch. Dist.,* 172 Ariz. 431, 433, 837 P.2d 1166, 1168 (App. 1992).

¶ 8  Until 1990, A.R.S. section 17–340 provided the Commission with its only authority to suspend license privileges. That statute gives the Commission discretion to suspend a license after a conviction under the Arizona game and fish code. *See id.* However, when the Commission exercises this authority, it must give notice within 180 days of the conviction and allow an opportunity to respond. *See id.*

¶ 9  In 1990, Arizona joined the Compact. *See* A.R.S. § 17–502. The Compact is an agreement among participating states concerning game and fish regulations. Article I of the Compact sets forth its policy to "[r]ecognize the suspension of wildlife license privileges of any person whose license privileges have been suspended by a participating state and treat such suspension as if it had occurred in their state provided the violation which resulted in the suspension could have been the basis for suspension in their state." *Id.* art. I, § (b)(2). To further this policy, Article V of the Compact provides that "[a]ll participating states shall recognize the suspension of license privileges of any person by any participating state as though the violation resulting in the suspension had occurred in their state and could have been the basis for suspension of license privileges in their state." *Id.* art. V, § (a).

¶ 10  Appellees do not argue that the Utah violations resulting in the Utah suspensions could not have been the basis for suspensions in Arizona. They argue only that the Commission lacked authority to suspend their licenses because it did not give them notice of the suspension proceedings within 180 days of the Utah convictions. We disagree.

¶ 11  The terms of the Compact are clear. Each participating state is required to "recognize" a suspension in another participating state. Appellees, however, urge us to construe the word "recognize" as simply requiring that Arizona "consider" a suspension in another state as a possible ground to support suspension after proceedings under A.R.S. section 17–340. We decline to do so.

¶ 12  We are guided, in part, by the instruction that the Compact must be "liberally construed so as to effectuate the purposes stated [therein.]" *Id.* art. X. More specifically, the express policy of the Compact is to have the license privileges of a person suspended in all participating states upon their suspension in any participating state. *See id.* art. I, § (b)(2). Thus, suspension in another state must be treated as if suspension has occurred in each participating state.

¶ 13  Were we to construe "recognize" as appellees suggest, it would substantially undermine the expressed purpose of the Compact. Although Article V does not apply until another state has suspended license privileges, Arizona has no control over the suspension processes of that other state. Consequently, Arizona cannot even be certain that it will receive notice of a suspension within 180 days of a foreign conviction. Applying the 180–day limit in A.R.S. section 17–340 to Article V would thereby condition the application of the Compact to such factors as each state's unique suspension timetable and even to simple delays in the reporting of

suspensions. We conclude that that would frustrate the intent of the Compact.[2]

¶ 14 Moreover, the word "recognize" evinces the mandatory nature of a participating state's suspension. Article V requires the reciprocal recognition of suspensions by other participating states. Were such reciprocal action discretionary, it would render Article V meaningless surplusage, adding nothing to the balance of the Compact. Since Article IV and A.R.S. section 17–340 already allow Arizona to "consider" convictions and their resulting consequences from other participating states and exercise discretion thereon, Article V must mean something more than mere consideration.

¶ 15 Accordingly, once proceedings have resulted in a suspension in any participating state, Article V eliminates further discretion on the part of any other participating state. Consequently, if the underlying conviction would require a suspension in the second state, then it must, upon its receipt of notice of such suspension, similarly suspend the license privileges.

¶ 16 In summary, A.R.S. section 17–340, by its own terms, only applies to discretionary suspensions. Because Article V is not discretionary and mandates suspension by all participating states, it is independent of A.R.S. section 17–340 and its 180–day notice requirement.

### Conclusion

¶ 17 We hold that Article V provides independent authority for a license suspension and that an Article V suspension is not conditioned upon the 180–day notice requirement of A.R.S. section 17–340(D). We therefore reverse and remand this matter for entry of an order affirming the Commission's suspension orders.

NOYES and VOSS, JJ., concur.

---

**2.** Furthermore, a delay in suspension proceedings in a second state works only to benefit the licensee because it leaves his or her license privileges intact for a longer period in those states.