1998 ND 113

**1ST SUMMIT BANK, a Pennsylvania Corporation, f/k/a Summit Bank, Plaintiff and Appellee,**

v.

**Edward O. SAMUELSON and Carol M. Samuelson, husband and wife, Defendants and Appellants.**

Civil No. 970383.

Supreme Court of North Dakota.

June 4, 1998.

Brad A. Sinclair, Serklund, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, for plaintiff and appellee.

Kermit E. Bye, Vogel, Kelly, Knutson, Weir, Bye & Hunke, Ltd., Fargo, for defendants and appellants.

VANDE WALLE, Chief Justice.

[¶ 1] Edward O. Samuelson and Carol M. Samuelson, husband and wife, appealed from the Amended Order and Order of the Cass County District Court denying their motion to set aside a foreign judgment. The foreign judgment was originally entered as a confessed judgment in the Commonwealth of Pennsylvania. We conclude the Pennsylvania confession of judgment procedure is not unconstitutional as applied in this case, and the foreign judgment is entitled to full faith and credit in North Dakota. We affirm.

I

[¶ 2] Edward Samuelson entered into a turkey farming venture in Christine, North Dakota. Samuelson was among a group of five investors headed by a business promoter. The group formed Dakota Turkey Farms, with each investor receiving a fixed percentage of the business. Samuelson initially owned eleven percent of the shares and, later, became a fifteen percent shareholder. Samuelson claims this increase in ownership interest was given to him without his consent.

[¶ 3] The group of investors included Barry Alberter, a director of 1st Summit Bank (then known as Summit Bank), a financial institution located in Pennsylvania. Alberter used his relationship with 1st Summit Bank to arrange for a loan in the amount of $290,000.00.

[¶ 4] In order to obtain the loan, Edward and Carol Samuelson were asked to sign a document entitled "GUARANTY AGREEMENT with POWER TO CONFESS JUDGMENT." The Samuelsons signed the guaranty agreement on October 11, 1991. The agreement was not signed under oath. *Compare* Pa.R.C.P. No. 2951(a)(2) (providing for the filing of "the instrument" in support of the entry of judgment by confession with no requirement the "instrument" be signed under oath); *with* N.D. R. Civ. P. 68(c)(2) (requiring a statement signed by defendant under oath for a confession of judgment in North Dakota). As the title of the guaranty agreement indicates, the document included a confession of judgment clause:

"5. In the event Borrower shall at any time fail to pay Bank, when the same shall be due, the principal of, or interest on, any indebtedness or obligation, the undersigned promises to pay such amount to Bank forthwith. The undersigned hereby further authorizes and empowers any attorney of any court of record within the United States of America, or elsewhere, to appear for the undersigned, and, with or without declaration filed confess judgment against the undersigned, in favor of Bank, or its successors and assigns, for the unpaid balance or balances of any such indebtedness or obligation of the Borrower to it, if not paid when due, whether by acceleration or otherwise, with costs of suit and attorney's commission of fifteen per centum (15%) or $300.00, whichever is greater, for collection, with release of errors, without stay of execution, or right of appeal, waiving all laws exempting real or personal property from execution, and inquisition and extension upon any levy on real estate are hereby waived and condemnation agreed to, and no benefit of exemption law now in force or which may hereafter be passed. No single exercise of the foregoing power to confess judgment shall be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be valid, voidable or void, but the power shall continue undiminished and it may be exercised from time to time as often as Bank, its successors and assigns, shall elect, until such time as Bank, its successors and assigns, shall have received payment in full of such indebtedness of Borrower, together with interest thereon and costs."

[¶ 5] On October 31, 1991, Edward Samuelson, along with the members of the Dakota Turkey Farms investment group, executed a commercial promissory note payable to 1st Summit Bank in the principal amount of

$290,000.00.[1] The commercial note was not signed by Carol Samuelson. Edward Samuelson and the other investors also signed a "LOAN TRANSACTIONS AND REPAYMENT AGREEMENT" which provided a payment schedule for the loan.

[¶ 6] Shortly after commencing operations, Dakota Turkey Farms defaulted on its loan. 1st Summit pursued the guarantors of the loan, including Edward and Carol Samuelson. An attorney representing 1st Summit filed a Complaint dated May 12, 1992, in the Court of Common Pleas of Cambria County, Pennsylvania. A confessed judgment was entered against the Samuelsons on May 20, 1992. Edward Samuelson claims he was not notified that a complaint had been filed, nor was he given the chance to answer. The Samuelsons were provided notice of the entry of the confessed Pennsylvania judgment in May 1992.

[¶ 7] Subsequently, 1st Summit Bank purportedly negotiated a "WORK–OUT AGREEMENT" with the makers of the commercial note to restructure and settle the debt. The agreement is not signed by 1st Summit or any of the indebted investors. Nevertheless, it appears the indebted investors have attempted to follow the agreement's repayment plan.

[¶ 8] In the "WORK–OUT AGREEMENT" Samuelson agreed to be liable for $60,414.68, an amount based on his percentage of ownership in the Dakota Turkey Farm. Despite this apparent apportionment of the debt, the agreement specifically provided that each of the parties remained "jointly and severally liable for the entire amounts due under the Note."

1. The commercial note also included a confession of judgment clause:

"POWER TO CONFESS JUDGMENT. The undersigned hereby authorizes and empowers any Prothonotary or any attorney of any court of record within the United States or elsewhere, to appear for the undersigned, and, with or without complaint filed, confess judgment against the undersigned in favor of the payee or any holder hereof for the above sum if not paid when due, whether by acceleration or otherwise, together with costs of suit and attorney's fee for collection hereinafter provided for, with release of errors, without any stay of

[¶ 9] The Samuelsons claim the previously confessed judgment was supposed to be canceled by 1st Summit as part of the agreement. However, language in the Agreement appears to continue "[t]he [n]ote and other loan documentation" in full force and effect.

[¶ 10] On March 19, 1997, the confessed judgment was renewed in Pennsylvania. The Pennsylvania judgment in the amount of $285,666.30 was filed in the Cass County District Court of North Dakota on April 18, 1997, with notice of filing served upon the Samuelsons that same day. *See* N.D.C.C. Ch. 28–20.1 (providing for enforcement of foreign judgments). When 1st Summit sought to enforce the judgment in North Dakota the Samuelsons filed a "Motion to Set Aside Foreign Judgment and Stay All Further Proceedings."

[¶ 11] The district court denied the Samuelsons' motion in an Order dated August 28, 1997. The Samuelsons moved for reconsideration of the court's Order. The court again denied the Samuelsons' motion, but filed an Amended Order on October 28, 1997, for the purpose of correcting a statutory citation. The court further ordered 1st Summit to enter a partial satisfaction of judgment to reflect the portion of the debt paid since 1992, when the original judgment was entered in Pennsylvania.

## II

[¶ 12] We are asked to consider whether a foreign judgment, entered upon a confession in the Commonwealth of Pennsylvania, is entitled to full faith and credit in the State of North Dakota. The Full Faith and Credit Clause of the United States Constitution provides:

execution or right of appeal. No single exercise of the foregoing power to confess judgment shall be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be valid, voidable, or void, but the power shall continue undiminished and it may be exercised from time to time as often as holder shall elect, until such time as holder shall have received payment in full of the debt, interest and costs."

A "prothonotary" is "[t]he title given (in *e.g.* Pennsylvania) to an officer who officiates as principal clerk of some courts." Black's Law Dictionary 1224 (6th ed.1990).

"Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."

U.S. Const. Art. IV, § 1.[2]

■ [¶ 13] The purpose of the Full Faith and Credit Clause was described in *Milwaukee County v. M.E. White Co.*, 296 U.S. 268, 276–77, 56 S.Ct. 229, 234, 80 L.Ed. 220 (1935):

"The very purpose of the full-faith and credit clause was to alter the status of the several states as independent foreign sovereignties, each free to ignore obligations created under the laws or by the judicial proceedings of the others, and to make them integral parts of a single nation throughout which a remedy upon a just obligation might be demanded as of right, irrespective of the state of its origin. That purpose ought not lightly to be set aside out of deference to a local policy which, if it exists, would seem to be too trivial to merit serious consideration when weighed against the policy of the constitutional provision and the interest of the state whose judgment is challenged."[3]

*See also Baker by Thomas v. General Motors Corp.*, —— U.S. ——, ——, 118 S.Ct. 657, 663, 139 L.Ed.2d 580 (1998) (quoting the same in part). Under the Full Faith and Credit Clause, North Dakota is obliged to recognize the judgments of a foreign state as our own, even though a similar judgment could not be obtained here. *American Standard Life and Accident Ins. Co. v. Speros*, 494 N.W.2d 599, 602 (N.D.1993); *Titus v. Wallick*, 306 U.S. 282, 291, 59 S.Ct. 557, 562, 83 L.Ed. 653 (1939) (stating full faith and credit requires "credit to be given to a money judgment rendered on a civil cause of action in another state, even though the forum would have been under no duty to entertain the suit on which the judgment was founded"); *see also Weldy v. Weldy*, 74 N.D. 165, 20 N.W.2d 583 (1945) (recognizing judicial records of foreign states must be given full faith and credit in North Dakota).

### A. Full Faith and Credit

[¶ 14] The Samuelsons argue the Pennsylvania judgment is not entitled to full faith and credit because Pennsylvania's confession of judgment procedure unconstitutionally denied their due process rights to pre-judgment notice and hearing by not requiring the debtors' signature under oath.[4] U.S. Const. amend. XIV, § 1. The Fourteenth Amendment to the United States Constitution guarantees due process by providing: "No state shall ... deprive any person of life, liberty or property, without due process of law...." *Id.* The Samuelsons rely on the proposition that "[a] judgment rendered in violation of due process is void in the rendering [s]tate and is not entitled to full faith and credit elsewhere." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980).

---

**2.** The Full Faith and Credit Act enabled this constitutional provision. 28 U.S.C. § 1738. The Act provides, in part:

"Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."

28 U.S.C. § 1738.

**3.** In addition to the constitutional requirement of full faith and credit for judgments from other states, we recognize as a matter of comity the judgments of tribal courts as those of a foreign nation. Rule 7.2, NDROC. Prior to the adoption of Rule 7.2, effective on January 1, 1995, we recognized tribal court judgments as a matter of comity in *Fredericks v. Eide–Kirschmann Ford*, 462 N.W.2d 164 (N.D.1990); *see also Lohnes v. Cloud*, 254 N.W.2d 430, 433 (N.D.1977) (recognizing Full Faith and Credit Clause is applicable only between states and Indian tribes are not states).

**4.** Under the Uniform Enforcement of Foreign Judgments Act, a foreign judgment is defined as "any judgment, decree, or order of a court of the United States or of any other court which is entitled to full faith and credit." N.D.C.C. § 28–20.1–01. In this part of the opinion, we are dealing with the primary question of whether a foreign judgment is entitled to recognition in North Dakota, not the method for enforcement of an already-recognized judgment. *Compare American Standard Life and Accident Ins. Co. v. Speros*, 494 N.W.2d 599 (N.D.1993).

[¶ 15] In Pennsylvania, a confession of judgment "is a voluntary submission to the jurisdiction of the court, given by consent and without the service of process." [5] *Horner Sales Corp. v. Motor Sport,* 377 Pa. 392, 105 A.2d 285, 286 (1954); *see* Pa.R.C.P. No. 2950 to 2967 (Confession of Judgment for Money). This process allows the lender to step into the shoes of a judgment creditor at will. George B. Reese, *Conflict of Laws,* 43 Syracuse L.Rev. 213, 228 (1992). The confessed judgment is a powerful debt collection device that has very often been criticized as an unjust means of manacling a debtor's property.[6] *D.H. Overmyer Co., Inc., of Ohio v. Frick Company,* 405 U.S. 174, 177, 92 S.Ct. 775, 778, 31 L.Ed.2d 124 (1972).

[¶ 16] While a confessed judgment implicates due process concerns, it does not violate Fourteenth Amendment due process *per se. Overmyer,* 405 U.S. at 187, 92 S.Ct. at 783. But in order to satisfy due process, a waiver of the right to civil pre-judgment notice and hearing must be voluntary, knowing, and intelligent. *Overmyer,* 405 U.S. at 185, 92 S.Ct. at 782 (assuming the same standard for waiver in a criminal proceeding is applicable for waiver in a corporate-property-right case); *Underwood Farmers Elevator v. Leidholm,* 460 N.W.2d 711, 714 (N.D. 1990) (applying the same standard to a waiver in a case involving a farmer's confession of judgment in favor of a grain elevator and noting other courts have applied this standard in other civil cases).

[¶ 17] In *Overmyer v. Frick,* the United States Supreme Court discussed the due process implications of the Ohio confession of judgment procedure. *Overmyer,* 405 U.S. at 176, 92 S.Ct. at 777. The Court noted that the factual setting is important in determining whether a waiver is voluntary, knowing, and intelligent. *Id.* at 188, 92 S.Ct. at 783.

[¶ 18] In reviewing the factual circumstances in *Overmyer,* the Court recognized that sophisticated corporate entities were involved and each party to the contract which contained the confession clause was represented by counsel. *Id.* at 186, 92 S.Ct. at 782. The Court remarked, "[t]his is not a case of unequal bargaining power or overreaching." *Id.* While holding that the confession of judgment involved in *Overmyer* resulted in an effective waiver, the Court nonetheless cautioned that other facts in other cases may lead to different results. *Id.* at 188, 92 S.Ct. at 783.

[¶ 19] In a companion case to *Overmyer,* the Supreme Court considered a class-action, constitutional challenge to the Pennsylvania confession of judgment scheme and rejected the argument that the procedure was invalid on its face. *Swarb v. Lennox,* 405 U.S. 191, 92 S.Ct. 767, 31 L.Ed.2d 138 (1972). The Court reiterated its discussion in *Overmyer,* that, "under appropriate circumstances, a cognovit [7] debtor may be held effectively and legally to have waived those rights he would possess if the document he signed had contained no cognovit provision." *Swarb v. Lennox,* 405 U.S. at 200, 92 S.Ct. at 772 (internal footnote added). The Court stopped short of affirming the district court's conclusion there was an ineffective waiver as to certain class members because the issue was not properly before the Court. *Id.* at 201, 92 S.Ct. at 772.

---

5. In North Dakota, a confession of judgment under Rule 68(c), N.D. R. Civ. P., is a procedure "whereby the debtor agrees that, upon default, the holder of the note may obtain judgment without notice or a hearing." *Underwood Farmers Elevator v. Leidholm,* 460 N.W.2d 711, 713 (N.D. 1990).

6. The Pennsylvania Supreme Court commented on the power of their own confession of judgment procedure in *Cutler Corp. v. Latshaw,* 374 Pa. 1, 97 A.2d 234, 236 (1953):

"A warrant of attorney authorizing judgment is perhaps the most powerful and drastic document known to civil law. The signer deprives himself of every defense and every delay of execution, he waives exemption of personal property from levy and sale under the exemption laws, he places his cause in the hands of a hostile defender. The signing of a warrant of attorney is equivalent to a warrior of old entering a combat by discarding his shield and breaking his sword. For that reason the law jealously insists on proof that this helplessness and impoverishment was voluntarily accepted and consciously assumed."

7. "Cognovit" is another way of saying confession of judgment. *See* Black's Law Dictionary 259–60 (6th ed.1990) (defining "Cognovit actionem," "Cognovit judgment," and "Cognovit note").

[¶ 20] In the present case, the Samuelsons assert a constitutional flaw mars the Pennsylvania confession of judgment procedure. The Samuelsons' purported flaw punctuates the difference between North Dakota's confession of judgment procedure and the procedure in Pennsylvania—namely, the requirement in North Dakota that the confession be verified by a statement signed under oath. N.D. R. Civ. P. 68(c)(2). Pennsylvania's procedure does not require "the instrument" filed in support of entry of a confessed judgment be signed under oath. *See* Pa.R.C.P. No. 2951(a)(2).

[¶ 21] The Samuelsons argue the lack of a statement verified by oath indicates they did not voluntarily, knowingly, and intelligently waive their due process right to pre-judgment notice and hearing. To support this argument the Samuelsons cite our decision in *Underwood Farmers Elevator v. Leidholm,* 460 N.W.2d 711.

[¶ 22] In *Leidholm,* a farmer entered into a contract with a grain elevator for the delivery of 25,000 bushels of oats. *Id.* at 712. After breaching the contract, the farmer signed a confession of judgment in favor of the elevator. *Id.* at 712. The farmer also signed a statement verifying that he had read the confession of judgment. *Id.* While the farmer admitted that he read and signed the confession of judgment, he claimed he did so with the elevator manager's assurance that it was just a formality and repayment terms would be worked out later. *Id.* We reversed and remanded the case so that the district court could determine whether the farmer made a voluntary, knowing, and intelligent waiver. *Id.* at 714.

[¶ 23] Although *Leidholm* stands for the proposition that we will enforce our own requirements for confession of judgment before allowing a judgment by a court of this State to be entered, *Id.* at 713, it does not translate into a holding that we will require compliance with our procedures in a foreign state, which has different procedures, before

a judgment of that state may be filed and enforced in North Dakota.

■ [¶ 24] While North Dakota's procedure for a confession of judgment differs from that of Pennsylvania, the presence of a verified statement under oath does not conclusively prove a confessing debtor has made a voluntary, knowing, and intelligent waiver.[8] *See, e.g., Leidholm,* 460 N.W.2d at 714 (reversing and remanding case even though debtor signed a statement verifying he had read the confession). Nor does the absence of a verified statement under oath necessarily mean that a confessed judgment was entered in violation of the debtor's due process rights. *Swarb,* 405 U.S. 191, 92 S.Ct. 767 (holding Pennsylvania's confession of judgment process is not unconstitutional *per se* ).

[¶ 25] In the present case, Edward Samuelson signed two documents that contained confession of judgment clauses. The first, which was also signed by Carol Samuelson, had the conspicuous title "POWER TO CONFESS JUDGMENT." The second document was signed to acquire a substantial loan and included the terms under which the loan was granted.

■ [¶ 26] The Samuelsons claim they were not sophisticated corporate debtors, like the debtors in *Overmyer,* but were simply minority owners in a turkey farm. We do not believe the confession of judgment procedure is limited to sophisticated corporate debtors or to debtors represented by counsel. Moreover, in this case the Samuelsons were part of a group of five investors in this farming venture, a group that included a business promoter and bank director.

■ [¶ 27] Finally, while the waiver of due process rights cannot be assumed, *Leidholm,* 460 N.W.2d at 713, the Samuelsons' effort to assert their due process rights before the North Dakota courts are misdirected. The Samuelsons chose to obtain a loan from 1st Summit Bank in Pennsylvania. They defaulted on that loan. They learned in May 1992, that a judgment had been entered

---

8. We note, however, our preference for North Dakota's procedure which provides greater assurance of a voluntary, knowing, and intelligent waiver of due process rights. *See* N.D. R. Civ. P. 68(c). Indeed, we require strict compliance for confessed judgments procured under our own procedure. *Leidholm,* 460 N.W.2d at 713.

against them in Pennsylvania. Yet they did not dispute the judgment or challenge its validity during the five full years the judgment was on file in Pennsylvania. *See* Pa. R.C.P. No. 2959 (providing procedure for "striking off or opening judgment"). Like the debtor in *Leidholm,* the Samuelsons should have challenged the confessed judgment before the courts of the jurisdiction of origin.

[¶ 28] The Samuelsons have also failed to avail themselves of procedures in North Dakota which would allow them to challenge the Pennsylvania judgment in Pennsylvania even after it was filed here. *See* N.D.C.C. § 28–20.1–04 (providing for stay of execution of foreign judgment in North Dakota so that debtor may challenge judgment in foreign jurisdiction). *Cf. Fredericks v. Eide–Kirschmann Ford,* 462 N.W.2d 164, 168–69 (N.D. 1990) (noting if tribal court erred in construction of tribal statute the remedy was to prosecute appeal through tribal court system). Instead, the Samuelsons seek to assert their rights in North Dakota.

[¶ 29] On this record and considering the posture of this case, we must conclude the Samuelsons made a voluntary, knowing, and intelligent waiver of their due process rights to pre-judgment notice and hearing by signing the two documents confessing judgment in favor of 1st Summit Bank.

B. *Enforcement of Foreign Judgment ·*

[¶ 30] Next, the Samuelsons claim the Pennsylvania judgment is unenforceable in North Dakota because it does not comply with North Dakota's confession-of-judgment procedure. *See* N.D. R. Civ. P. 68(c). Not surprisingly, the Samuelsons again point to the fact 1st Summit failed to follow the procedural requirement in North Dakota that the confession be verified by a statement signed under oath. N.D. R. Civ. P. 68(c)(2). The Samuelsons cite our decision in *American Standard v. Speros,* 494 N.W.2d at 603, wherein we held a foreign judgment is to be enforced according to North Dakota law.

[¶ 31] In *Speros,* an authenticated copy of an Arizona judgment was filed in a North Dakota District Court. *Id.* at 601. The issue in *Speros,* was whether the North Dako-

ta or Arizona garnishment law applied in the enforcement of the judgment. *Id.* To answer that question we turned to North Dakota's rendition of the Uniform Enforcement of Foreign Judgments Act (U.E.F.J.A.), N.D.C.C. §§ 28–20.1–01 to 08.

[¶ 32] North Dakota enacted the 1964 revision of the U.E.F.J.A. which provides for the enforcement of foreign judgments. *Id.* In applying this Act in *Speros,* we recognized that once a properly authenticated foreign judgment is filed in North Dakota, the judgment is treated in the same manner as a judgment of a district court of this State. *Speros,* 494 N.W.2d at 602. "A judgment so filed has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of a district court ... of this state and may be enforced or satisfied in like manner." N.D.C.C. § 28–20.1–02. *See also Speros,* 494 N.W.2d at 602 (quoting the same).

[¶ 33] We interpreted the U.E.F.J.A. as allowing the local law of the forum to determine the method by which another state's judgment is enforced. *Speros,* 494 N.W.2d at 602. *See also Baker by Thomas,* —— U.S. at ——, 118 S.Ct. at 665 (noting "[f]ull faith and credit ... does not mean that States must adopt the practices of other States regarding the time, manner, and mechanisms for enforcing judgments"). We noted that "[a]lthough we are bound to give full faith and credit to the substance of foreign state judgments, procedure and remedies are different from substance...." *Speros,* 494 N.W.2d at 603. Because the substance of the contract in *Speros* had already been determined by an Arizona court, we held, consistent with the U.E.F.J.A., that North Dakota law governed the method of enforcement. *Id.*

[¶ 34] We believe the Samuelsons' reliance on *Speros* in this case is misplaced. Here, by contrast to *Speros,* the Samuelsons are not arguing over the method of enforcement, but are seeking to block enforcement altogether by challenging the foreign judgment, itself. The Samuelsons claim North Dakota's confession of judgment procedure must be followed before another state's confessed judg-

ment may be enforced. *See* N.D. R. Civ. P. 68(c). The consequence of that argument would be to disallow a foreign judgment whenever the rendering state's processes differ from our own. If that were the case, the concept of full faith and credit would become a metaphorical empty suit. *See* U.S. Const. Art. IV, § 1.

[¶ 35] In *Baker by Thomas v. General Motors Corp.,* —— U.S. at —— – ——, 118 S.Ct. at 663–64, the United States Supreme Court recently explained the full faith and credit required for final judgments:

> "The Full Faith and Credit Clause does not compel 'a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate.' *Pacific Employers Ins. Co. v. Industrial Accident Comm'n,* 306 U.S. 493, 501, 59 S.Ct. 629, 632, 83 L.Ed. 940 (1939); see *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 818–819, 105 S.Ct. 2965, 2977–2978, 86 L.Ed.2d 628 (1985). Regarding judgments, however, the full faith and credit obligation is exacting. A final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land...."

*See also Milwaukee County,* 296 U.S. at 275, 56 S.Ct. at 233 (stating "[i]n a suit upon a money judgment for a civil cause of action, the validity of the claim upon which it was founded is not open to inquiry, whatever its genesis").

[¶ 36] Even if we were to ask another state to comply with North Dakota law in rendering one of their own judgments, full faith and credit precludes us from doing so. There are "'[no] considerations of local policy or law which could rightly be deemed to impair the force and effect which the full faith and credit clause and the Act of Congress require to be given to [a money] judgment outside the state of its rendition.'" *Baker by Thomas,* —— U.S. at ——, 118 S.Ct. at 664 (quoting *Magnolia Petroleum Co. v. Hunt,* 320 U.S. 430, 438, 64 S.Ct. 208, 213, 88 L.Ed. 149 (1943)) (inserted text retained).

[¶ 37] We are required to give full faith and credit to this Pennsylvania money judgment, regardless of our own policy or law.

### III

[¶ 38] Accordingly, we affirm.

[¶ 39] SANDSTROM, NEUMANN, MARING and MESCHKE, JJ., concur.

