2005 ND 204

**David B. GRAY, Plaintiff and Appellant**

v.

**NORTH DAKOTA GAME AND FISH DEPT., Defendant and Appellee.**

No. 20050103.

Supreme Court of North Dakota.

Nov. 29, 2005.

Rehearing Denied Dec. 20, 2005.

David B. Gray (pro se), Bismarck, N.D.

Dean J. Haas, Assistant Attorney General, Office of Attorney General, Bismarck, N.D., for defendant and appellee.

SANDSTROM, Justice.

[¶ 1] David B. Gray appealed from a judgment[1] affirming the North Dakota Game and Fish Department's order suspending Gray's hunting, fishing, and trapping privileges in North Dakota from September 21, 2004, through January 1, 2006. We conclude Gray has failed to establish that his statutory or constitutional rights were violated by the Department's suspension of his hunting privileges in North Dakota on the basis of his violation of a Wyoming hunting law, and we affirm.

I

[¶ 2] On April 16, 2004, Gray, a North Dakota resident, was convicted by a Wyoming circuit court jury of trespass to hunt in violation of Wyo. Stat. Ann. § 23–3–305(b) (2005). While hunting in Wyoming, Gray had driven his truck across private property posted with "No Trespassing" and "No Hunting" signs to access public property for the purpose of hunting on the public property. Gray's conviction was upheld on appeal to the Wyoming district court. As a result of the conviction, Gray's privileges to obtain hunting, fishing, and trapping licenses in Wyoming were "suspended for the remainder of 2004 and all of 2005."

[¶ 3] North Dakota and Wyoming are members of the Interstate Wildlife Violator Compact. *See* N.D.C.C. ch. 20.1–16; Wyo. Stat. Ann. §§ 23–6–301–23–6–304 (2005). After receiving information about Gray's Wyoming suspension, the Department informed Gray by letter on October 12, 2004, that his North Dakota hunting, fishing, and trapping privileges were also suspended from September 21, 2004, through January 1, 2006. Gray requested a hearing. The Administrative Law Judge ("ALJ") recommended that the Department's suspension of Gray's privileges be affirmed because N.D.C.C. § 20.1–16–03 authorized the Department's actions. The Department adopted the ALJ's recommendations. Gray appealed to the district court, which upheld the Department's decision.

---

1. Although the appeal is from an order for judgment, which is not appealable, we will treat this as an appeal from the subsequently entered consistent judgment. *See, e.g., Haugenoe v. Bambrick*, 2003 ND 92, ¶ 1 n. 1, 663 N.W.2d 175.

[¶ 4] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 28–32–42. Gray's appeal to this Court is timely under N.D.C.C. § 28–32–49 and N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–32–49.

## II

[¶ 5] Gray challenges the Department's suspension of his hunting privileges on numerous grounds.

[¶ 6] Under N.D.C.C. § 28–32–46, the district court must affirm an order of an administrative agency unless it finds any of the following are present:

1. The order is not in accordance with the law.
2. The order is in violation of the constitutional rights of the appellant.
3. The provisions of this chapter have not been complied with in the proceedings before the agency.
4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
6. The conclusions of law and order of the agency are not supported by its findings of fact.
7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

[¶ 7] Our scope of review is limited in appeals from decisions of administrative agencies. We review the decision of the administrative agency in the same manner as the district court. N.D.C.C. § 28–32–49. We exercise restraint in deciding whether the agency's findings of fact are supported by a preponderance of the evidence, and we do not make independent findings or substitute our judgment for that of the agency. *Paul v. Workforce Safety and Ins.*, 2003 ND 188, ¶ 11, 671 N.W.2d 795. We decide only whether a reasoning mind reasonably could have decided the agency's findings were proven by the weight of the evidence from the entire record. *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220 (N.D.1979). Questions of law, including the interpretation of a statute, are fully reviewable on appeal from an administrative decision. *Bjerklie v. Workforce Safety and Ins.*, 2005 ND 178, ¶ 9, 704 N.W.2d 818.

### A

[¶ 8] Gray argues the Department erred in suspending his North Dakota hunting privileges on the basis of his Wyoming conviction for trespass to hunt. Resolution of this issue requires an examination of North Dakota's version of the Interstate Wildlife Violator Compact.

[¶ 9] The legislature adopted a version of the Interstate Wildlife Violator Compact effective August 1, 2001. *See* N.D.C.C. ch. 20.1–16; 2001 N.D. Sess. Laws ch. 230 § 1. In general, the Compact, which to date has been adopted by more than 20 states, is an interstate agreement promoting cooperation in enforcing laws related to managing wildlife resources whereby participating states agree to honor other participating states' wildlife license suspensions of those who violate game and fish laws. *Stapley v. State*, 192 Ariz. 427, 966 P.2d 1031, 1032 (App.1998). The Compact sets forth the policy of participating states to "[r]ecognize the suspension of wildlife license privileges of any person

whose license privileges have been suspended by a participating state." N.D.C.C. § 20.1–16–01, art. 1, § 2(b). Under the Compact, "[a]ll participating states may recognize the suspension of license privileges of any person by any participating state as though the violation resulting in the suspension had occurred in their state and could have been the basis for suspension of license privileges in their state," and "shall communicate suspension information to other participating states in form and content as contained in the compact manual." N.D.C.C. § 20.1–16–01, art. 5, §§ 1 and 2.

[¶ 10] Section 20.1–16–03 N.D.C.C., provides for reciprocal recognition of license suspensions:

1. When the department receives notice of the suspension of a person's hunting, trapping, or fishing privileges by a participating state, the department shall determine whether the violation leading to the suspension could have led to the forfeiture of privileges under this state's law. If the department determines that the person's privileges could have been forfeited, the department may suspend the person's privileges to hunt, trap, or fish in this state for the same period as imposed by the participating state not to exceed the maximum limits allowed by state law.

2. When the department receives notice of a conviction of a state resident from the licensing authority of the issuing state, the department may treat the conviction as if it had occurred in this state and shall determine whether the conviction could have led to the forfeiture of the resident's hunting, trapping, or fishing privileges under state law. If the department determines that

the resident's privileges could have been forfeited, the department may suspend the resident's privileges to hunt, trap, or fish in this state for the same period as the issuing state, not to exceed the limit that could have been imposed under state law.

Upon receiving notification of Gray's Wyoming suspension, the Department was required to determine whether the violation leading to the suspension could have led to the forfeiture of privileges under North Dakota law, and if so, the Department could treat the conviction as if it had occurred in North Dakota.

[¶ 11] Gray was found guilty of violating Wyo. Stat. Ann. § 23–3–305(b) (2005), which provides that "[n]o person shall enter upon the private property of any person to hunt, fish, or trap without the permission of the owner or person in charge of the property." In affirming Gray's conviction on appeal, the Sixth Judicial District Court of Wyoming described the circumstances leading to Gray's suspension:

On November 1, 2003, Appellant drove his truck across private property to access public property for the purpose of hunting there. In so doing, he drove past signs cautioning "No Trespassing," and "No Hunting". The property owner ("Complainant") saw Appellant's vehicle on the public property, which could be accessed via his property. Because the vehicle appeared to Complainant to be identical to one on which the property owner had left notes during the previous two hunting seasons, requesting the owner first obtain permission to cross his property, Complainant notified Wyoming Game and Fish authorities. Soon thereafter, a Game Warden arrived, located Appellant, who was also the registered owner of the vehicle, and following a brief in-

vestigation and discussion with Appellant, issued him a citation.

*Gray v. State*, No. CR–1268, at p. 2 (Wyo. Dist. Ct., Sixth Jud. Dist., Sept. 28, 2004).

[¶ 12] In North Dakota, it is unlawful for a person to trespass on posted land for the purpose of hunting under N.D.C.C. § 20.1–01–18, which provides that "[n]o person may hunt or pursue game, or enter for those purposes, upon legally posted land belonging to another without first obtaining the permission of the person legally entitled to grant the same." The legal requirements for posting land in North Dakota are set forth in N.D.C.C. § 20.1–01–17:

> Only the owner or tenant of any land may post it by placing signs alongside the public highway or the land giving notice that no hunting is permitted on the land. The name of the person posting the land must appear on each sign in legible characters. The signs must be readable from the outside of the land and must be placed conspicuously not more than eight hundred eighty yards [804.68 meters] apart. As to land entirely enclosed by a fence or other enclosure, posting of signs at or on all gates through the fence or enclosure constitutes a posting of all the enclosed land. No person may in any manner deface, take down, or destroy posting signs.

The major difference between the North Dakota and Wyoming hunting trespass laws is that under North Dakota law, permission to hunt is assumed absent legal posting, while under Wyoming law, refusal of permission to hunt is assumed unless permission to hunt is expressly given. Gray argues the Department erred in suspending his North Dakota hunting privileges on the basis of the Wyoming conviction because our hunting trespass law differs from Wyoming's law.

[¶ 13] We reject Gray's argument that the elements of hunting trespass under the North Dakota and Wyoming statutory schemes must be identical before the Department may suspend hunting privileges on the basis of the Wyoming conviction. The Interstate Wildlife Violator Compact imposes no requirement that the laws of the participating states be identical. Rather, the purpose of the Compact is for participating states to "[p]romote compliance with the statutes, laws, ordinances, regulations, and administrative rules relating to management of wildlife resources *in their respective states*." N.D.C.C. § 20.1–16–01, art. 1, § 2(a) (emphasis added). The Compact places a responsibility upon every person "to comply with wildlife preservation, protection, management and restoration laws, ordinances, regulations, and administrative rules of the participating states as a condition precedent to the continuance or issuance of *any* license to hunt, fish, trap, or possess wildlife." N.D.C.C. § 20.1–16–01, art. 1, § 1(d) (emphasis added). Gray's construction of the Compact would undermine this purpose and strip the Compact of any real meaning because the wildlife laws of the participating jurisdictions are not identical.

[¶ 14] A relitigation of the factual components of the Wyoming violation in North Dakota is neither necessary nor allowed. *See* N.D.C.C. § 20.1–16–05(3)(a) (listing issues for consideration at administrative hearing). Section 20.1–16–03(2), N.D.C.C., directs the Department to treat the Wyoming "conviction" as if it had occurred in North Dakota and to determine whether the conviction could have led to the forfeiture of Gray's hunting, trapping, or fishing privileges under North Dakota law. Like Wyoming, North Dakota prohibits trespassing on land for the purpose of hunting, and upon a conviction for violating N.D.C.C. § 20.1–01–18, "the court shall suspend the defendant's hunting, fishing,

and trapping privileges for a period of at least one year." N.D.C.C. § 20.1–01–26. Because North Dakota law provides for suspension of privileges for a hunting trespass violation, the Department correctly suspended Gray's hunting privileges on the basis of his Wyoming hunting trespass violation.

[¶ 15] Moreover, the Department found that, according to the record of the Wyoming court proceedings, the Wyoming private land Gray crossed to hunt was posted with "No Trespassing" and "No Hunting" signs and that Gray did not have permission to hunt on or cross the land. These circumstances would support a conviction under North Dakota law. Although Gray argues the signs in Wyoming did not comply with the technical requirements of N.D.C.C. § 20.1–01–17, Gray cannot use the technical requirements of North Dakota law as a defense to reciprocal enforcement of the Wyoming conviction in North Dakota.

[¶ 16] We conclude the Department did not misconstrue the law in suspending Gray's North Dakota hunting privileges.

### B

[¶ 17] Gray argues the Department should not have given full faith and credit to his Wyoming conviction because it was "wrongful[ly]" obtained.

[¶ 18] The United States Constitution requires states to give full faith and credit to "the public Acts, Records, and judicial Proceedings of every other State." U.S. Const. art. IV, § 1. *See Smith v. Baumgartner,* 2003 ND 120, ¶ 16, 665 N.W.2d 12. However, a judgment rendered in violation of due process is void in the rendering state and is not entitled to full faith and credit elsewhere. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d

490 (1980); *1st Summit Bank v. Samuelson,* 1998 ND 113, ¶ 14, 580 N.W.2d 132.

[¶ 19] Gray's argument is premised on the Wyoming circuit court's allowance of an amendment to the criminal citation at his trial. The citation erroneously identified the location of the offense, and Gray claimed he was innocent on the basis of the location listed in the citation. Gray argued that, by allowing the citation to be amended at trial, the Wyoming circuit court defeated Gray's planned defense strategy. On appeal, the Wyoming district court found Gray was not prejudiced by the amendment, because Gray's brief "provides ample evidence that not only was he aware of the charge and the elements thereof, but that he approached the trial with a well-developed, albeit ultimately unsuccessful, strategy for the conduct of his defense." The Wyoming district court noted Gray's brief "demonstrates that he recognized prior to the trial that the location of the offense contained in the original citation was in error." As in Wyoming, a North Dakota trial court has discretion to amend a criminal complaint if the amendment does not prejudice the defendant. *See, e.g., State v. Higgins,* 2004 ND 115, ¶ 5, 680 N.W.2d 645. There is nothing "wrongful" about Gray's Wyoming conviction that would preclude giving it full faith and credit in North Dakota.

### C

[¶ 20] Gray argues the Interstate Wildlife Violator Compact violates the compact clause of the federal constitution, which provides that "[n]o state shall, without the consent of Congress, . . . enter into any . . . compact with another state." U.S. Const. art. I, § 10.

[¶ 21] The Department argues congressional consent for the Compact has been given under 4 U.S.C. § 112(a), which provides the "consent of Congress is hereby

given to any two or more States to enter into agreements or compacts for cooperative effort and mutual assistance in the prevention of crime and in the enforcement of their respective criminal laws and policies." Assuming for purposes of argument that 4 U.S.C. § 112(a) does not provide the required consent of Congress, we note the United States Supreme Court has held that when an agreement between states is not directed to the formation of any combination tending to increase the political power in the states, which may encroach upon or interfere with the supremacy of the United States, the agreement does not fall within the scope of the compact clause and will not be invalidated for lack of congressional consent. *See Northeast Bancorp, Inc. v. Board of Governors of Federal Reserve Sys.,* 472 U.S. 159, 175–76, 105 S.Ct. 2545, 86 L.Ed.2d 112 (1985); *Cuyler v. Adams,* 449 U.S. 433, 439, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981). The Interstate Wildlife Violator Compact is "based on the format of the existing Drivers License Compact and Non–Resident Violator Compact, both of these related to motor vehicle operator licensing and enforcement." *Wildlife Violator Compact Operations Manual,* at p. 1 (1999). In holding the Drivers License Compact is not subject to the compact clause, the court in *Koterba v. Commonwealth,* 736 A.2d 761, 765–66 (Pa.Cmwlth.1999) (footnote omitted), *cert. denied,* 531 U.S. 816, 121 S.Ct. 53, 148 L.Ed.2d 21 (2000), explained:

> [W]e conclude without hesitation that the Driver's License Compact is not the sort of interstate agreement for which the compact clause mandates congressional approval. Neither the sharing of information among states regarding serious motor vehicle offense convictions nor the regulation by each individual state of the driving privileges of its own citizens threatens the supremacy of the

United States. Indeed, the issuance [and denial] of driver's licenses is a function traditionally exercised by the individual state governments. Further, by joining the Compact, the member states have exercised no power that they could not exercise independently. There can be no question of the authority of any member state to decree that a driver's license it has issued shall be suspended if the licensee is convicted of a serious motor vehicle offense either within or outside its boarders [sic]. No state has ceded any of its sovereign powers.

*See also State v. Kurt,* 802 S.W.2d 954, 955 (Mo.1991) (Nonresident Violator Compact regarding reciprocal enforcement of out-of-state traffic citations does not require congressional consent under the compact clause).

[¶ 22] " '[P]rotection of the wild life of the State is peculiarly within the police power, and the State has great latitude in determining what means are appropriate for its protection.' " *Baldwin v. Fish and Game Comm'n of Montana,* 436 U.S. 371, 391, 98 S.Ct. 1852, 56 L.Ed.2d 354 (1978) (quoting *Lacoste v. Department of Conservation,* 263 U.S. 545, 552, 44 S.Ct. 186, 68 L.Ed. 437 (1924)). The sharing of information regarding wildlife violations among Compact participants and the regulation of the hunting privileges of citizens by individual states do not encroach upon nor interfere with the supremacy of the United States. We conclude the Interstate Wildlife Violator Compact does not require congressional consent under the compact clause.

### D

[¶ 23] Gray argues the suspension of his North Dakota hunting privileges on the basis of his Wyoming conviction violates double jeopardy principles.

[¶ 24] The double jeopardy clause of the Fifth Amendment to the United States Constitution and N.D. Const. art. I, § 12, protect against successive prosecutions and punishments for the same criminal offense. *See State v. Kelly*, 2001 ND 135, ¶ 11, 631 N.W.2d 167. However, a remedial administrative sanction, as opposed to a punitive or deterrent one, does not constitute a basis for a double jeopardy claim. *State v. Zimmerman*, 539 N.W.2d 49, 55–56 (N.D.1995). In *Zimmerman*, at 55, this Court held the administrative suspension of a driver's license for driving under the influence of alcohol serves the remedial, nonpunitive goal of removing potentially dangerous drivers from the roads and does not constitute punishment for purposes of double jeopardy analysis. We said any punitive or deterrent value an administrative license suspension may have is merely incidental, and a suspension is not overwhelmingly disproportionate to the remedial purpose. *Id.* at 55–56.

[¶ 25] In the context of the Drivers License Compact, courts have likewise held that the compact-based suspension of operating privileges does not violate double jeopardy principles because the suspension is a legitimate civil remedial sanction that is not so punitive in nature as to be transformed into a criminal penalty for double jeopardy purposes. *See, e.g., Marshall v. Department of Transp.*, 137 Idaho 337, 48 P.3d 666, 671 (App.2002) ("the Compact's prohibition against licensing a driver whose foreign license has been revoked is a legitimate remedial measure designed to prevent unsafe drivers from operating vehicles on Idaho's highways"); *State v. Pepe*, 379 N.J.Super. 411, 879 A.2d 747, 752 (App.Div.2005) (double jeopardy did not bar the imposition of two periods of suspension for driving while intoxicated in another state); *Venafro v. Commonwealth*, 796 A.2d 384, 387 (Pa.Cmwlth.2002) (quot-

ing *Department of Transp. v. McCafferty*, 563 Pa. 146, 758 A.2d 1155, 1160 (2000)) ("Since operating privilege suspensions are collateral civil consequences of criminal convictions, the Commonwealth, as a sovereign state, 'may impose a separate sanction beyond that imposed by the other state without violating the Double Jeopardy Clause' ").

[¶ 26] The Interstate Wildlife Violator Compact declares some of the policies and purposes underlying its provisions:

d. Wildlife resources are valuable without regard to political boundaries; therefore, every person should be required to comply with wildlife preservation, protection, management and restoration laws, ordinances, regulations, and administrative rules of the participating states as a condition precedent to the continuance or issuance of any license to hunt, fish, trap, or possess wildlife.

e. Violation of wildlife laws interferes with the management of wildlife resources and may endanger the safety of persons and property.

f. The mobility of many wildlife law violators necessitates the maintenance of channels of communication among the various states.

N.D.C.C. § 20.1–16–01, art. 1, § 1(d)(e) and (f). The suspension of hunting privileges is a legitimate civil remedial measure that serves the goal of protecting wildlife resources as well as the safety of persons and property and does not constitute punishment for purposes of double jeopardy analysis. We conclude Gray's double jeopardy rights were not violated by the Department's suspension of his North Dakota hunting privileges.

E

[¶ 27] Gray argues his due process rights have been violated because "[d]ue process is notice, hearing then suspension."

[¶ 28] Due process is flexible and must be analyzed on a case-by-case basis, balancing the competing interests and assessing whether the basic due process requirement of fairness has been satisfied. *Wahl v. Morton County Soc. Servs.*, 1998 ND 48, ¶ 6, 574 N.W.2d 859. In determining what process is due under the Fourteenth Amendment, a court must consider the private interests at stake in a governmental decision, the governmental interests involved, and the value of the procedural requirements. *Jensen v. Satran*, 332 N.W.2d 222, 227 (N.D.1983).

[¶ 29] This Court has held that "[p]rocedural due process does not require a pre-suspension hearing before the State may suspend a motor vehicle operator's license for a violation of the statutory conditions under which it was issued." *State v. Harm*, 200 N.W.2d 387, 388 Syll. ¶ 4 (N.D.1972); *see also State v. Tininenko*, 371 N.W.2d 762, 763 (N.D.1985); *Kosmatka v. Safety Responsibility Div.*, 196 N.W.2d 402, 403 Syll. ¶ 4 (N.D.1972). The reasoning behind these decisions is that the interests of protecting the public outweigh the need for a presuspension hearing. *See Tininenko*, at 763; *Kosmatka*, at 406. In *City of Maumee v. Gabriel*, 35 Ohio St.3d 60, 518 N.E.2d 558, 562 (1988), the Ohio Supreme Court ruled that presuspension notice and hearing before a license could be suspended under the Nonresident Violator Compact relating to out-of-state traffic citations was not required under the due process clause. The court reasoned the right to possess a driver's license is not a substantial private interest, the state's interests to insure compliance with the terms of an issued citation and to remove drivers who fail to obey the procedural laws or regulations of the respective jurisdictions were substantial, and the law's provision for a post-license suspension hearing satisfied due process requirements. *Id.* at 561–62.

[¶ 30] We believe the state's interest in insuring compliance with wildlife hunting laws outweighs the interest that hunting law violators have in their hunting privileges. Furthermore, N.D.C.C. § 20.1–16–05(1) and (2) provides for a prompt post-suspension hearing upon the violator's request. We conclude presuspension notice and hearing were not constitutionally required to satisfy Gray's due process rights.

F

[¶ 31] Gray complains that North Dakota's version of the Interstate Wildlife Violator Compact differs from the original Compact because the legislature changed the term "shall" to "may" in various parts of the legislation. For example, N.D.C.C. § 20.1–16–01, art. 5, § 1 (emphasis added), provides that "[a]ll participating states *may* recognize the suspension of license privileges of any person by any participating state as though the violation resulting in the suspension had occurred in their state and could have been the basis for suspension of license privileges in their state." *See also* N.D.C.C. §§ 20.1–16–03(1) and (2), and 20.1–16–04(1). The legislative history of the change in terms reflects that it was intended to allow the Department some discretion "to look at [a violation] more closely." *Hearing on S.B. 2178 Before the House Natural Resources Committee*, 57th N.D. Legis. Sess. (March 1, 2001) (testimony of Daryl Kleyer, Game and Fish Department). Gray does not argue that this aspect of the legislation is an unconstitutional delegation of legislative powers to the Department. *See generally Kelsh v. Jaeger*, 2002 ND 53, ¶ 21, 641

N.W.2d 100. Rather, Gray asserts that his equal protection rights have been violated in this case because the Department has the discretion to punish some violators with suspensions and to not punish others.

[¶ 32] Gray's equal protection challenge to the Compact appears to be based on a claim of selective prosecution. In *Gale v. North Dakota Bd. of Podiatric Med.*, 1997 ND 83, ¶ 32, 562 N.W.2d 878, this Court explained:

> Selective prosecution, if based upon improper motives, can violate equal protection. *State v. Mathisen*, 356 N.W.2d 129, 133 (N.D.1984); *State v. Knoefler*, 325 N.W.2d 192, 197 (N.D.1982). However, selective enforcement, by itself, is not a constitutional violation. *Mathisen*, 356 N.W.2d at 133; *Knoefler*, 325 N.W.2d at 197. A defendant claiming selective prosecution must establish other similarly situated individuals have not been prosecuted and the prosecution of the defendant is based upon constitutionally impermissible considerations. *Mathisen*, 356 N.W.2d at 133; *Knoefler*, 325 N.W.2d at 198.

In this case, Gray has failed to establish that other similarly situated individuals have not had their hunting privileges suspended by the Department or that his suspension is based upon any constitutionally impermissible considerations.

[¶ 33] We conclude that Gray's equal protection rights have not been violated by the Department's action.

### G

[¶ 34] Gray argues the Interstate Wildlife Violator Compact is an unconstitutional ex post facto law.

[¶ 35] An ex post facto law is one that makes an action done before the passing of the law, and which was innocent when done, criminal. *See State v. Burr,*

1999 ND 143, ¶ 10, 598 N.W.2d 147. The Interstate Wildlife Violator Compact was enacted in North Dakota in 2001. *See* 2001 N.D. Sess. Laws ch. 230. Gray was convicted in Wyoming in 2004. There has been no ex post facto application of the Compact against Gray.

### III

[¶ 36] We have considered Gray's other arguments; they are without merit. The judgment is affirmed.

[¶ 37] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.

VANDE WALLE, Chief Justice, concurring specially.

[¶ 38] I agree with and have signed the opinion written for the Court by Justice Sandstrom. I write separately only to note my discomfort with North Dakota's statutory version of the Interstate Wildlife Violator Compact that leaves to the Game and Fish Department the decision of whether or not it will recognize a suspension of hunting privileges in another state and whether or not it will suspend the violator's hunting privileges in North Dakota. As Justice Sandstrom notes, Gray has not argued an unconstitutional delegation of legislative power to the Department and Gray has not shown that other similarly situated individuals have not had their hunting privileges suspended. Although the legislative change from the original Compact may have been well intended, those issues nevertheless remain open issues and the legislation remains vulnerable to attack on those grounds.

[¶ 39] Gerald W. VandeWalle, C.J.